PEOPLE v SMITH

1. Constitutional Law—Statutes—Invalidity—Murder—Immunity from Prosecution—Criminal Sexual Psychopath Act.

An unconstitutional statute though having the form and name of law is in reality no law and is wholly void and ineffective for any purpose; since unconstitutionality dates from the time of its enactment and not merely from the date of the decision so branding it, an unconstitutional law is as inoperative as if it had never been passed; therefore, prosecution of a murder charge against a defendant who had been committed as a criminal sexual psychopath and who has since been released is not barred by a section of the criminal sexual psychopath act which gives the defendant immunity from prosecution on the particular charge where the act has been declared unconstitutional (MCLA 780.508).

2. Criminal Law—Constitutional Law—Right to Speedy Trial—Factors.

The four factors to be considered when a denial of the constitutional right to a speedy trial is alleged are the length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.

3. Criminal Law—Right to Speedy Trial—Length of Delay.

The length of delay standing by itself is not determinative of a denial of the right to a speedy trial.

4. Criminal Law—Right to Speedy Trial—Demand—Waiver.

A demand for trial by a defendant is not a prerequisite to the assertion of the right to a speedy trial.

5. Criminal Law—Right to Speedy Trial—Interests Protected.

The right to a speedy trial was designed to prevent oppressive pretrial incarceration, minimize anxiety and concern of the accused, and limit the possibility that the defense will be impaired.

References for Points in Headnotes
[1] 16 Am Jur 2d, Constitutional Law § 177.
[2–6] 21 Am Jur 2d, Criminal Law §§ 245, 253, 254.

6. CRIMINAL LAW—RIGHT TO SPEEDY TRIAL—19-YEAR DELAY—CRIMI-
   NAL SEXUAL PSYCHOPATH ACT—IMMUNITY FROM PROSECUTION—
   CONSTITUTIONAL LAW—WAIVER—PREJUDICE.
   A defendant who had been committed under the criminal sexual
   psychopath act and was immune from prosecution until that
   act was declared unconstitutional was not denied his right to a
   speedy trial by a 19-year delay where the delay was beyond the
   control of the prosecutor and justifiable under the circum-
   stances, and no prejudice to his defense resulted from the delay
   (MCLA 780.501, 780.509).

Appeal from Kalamazoo, Raymond W. Fox, J. Submitted Division 3 November 12, 1974, at Grand Rapids. (Docket No. 19220.) Decided January 8, 1975. Leave to appeal applied for.

Louis M. Smith was charged with murder. A petition for commitment of defendant under the criminal sexual psychopath act was granted. After more than 18 years of confinement the defendant was released when the act was declared unconstitutional. The people petitioned for a bench warrant for defendant's arrest on the original charge. Petition granted authorizing issuance of a bench warrant. Defendant appeals by leave granted. Affirmed. Leave to appeal applied for.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Donald A. Burge,* Prosecuting Attorney, and *Stephen M. Wheeler,* Chief of Appellate Division, for the people.

*Francis A. Allen* and *Robert A. Burt,* for defendant.

Before: T. M. BURNS, P. J., and R. B. BURNS and CARLAND,* JJ.

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

T. M. BURNS, P. J. On February 5, 1954, defendant Louis Maurice Smith, then 18 years of age, was committed to the Kalamazoo State Hospital following a series of somewhat minor acts of sexual aberrations such as window peeping, stealing articles of feminine apparel, and indecent exposure. On November 5, 1954, Marilyn Kraai, a student nurse, was found strangled to death in the basement of the Kalamazoo State Hospital. An autopsy revealed that she had also been the victim of rape. On that same date, defendant was arrested and charged with murder. On November 17, 1954, a preliminary hearing was held in municipal court and evidence was produced to indicate that the crime of murder had been committed and that there was probable cause to believe that defendant committed the crime. Part of the evidence produced was a confession by the defendant. At the conclusion of the preliminary examination, defendant was bound over to the circuit court, and on November 22, 1954, an information was filed by the prosecuting attorney charging defendant with the murder of Marilyn Kraai. At the arraignment on that date, defendant stood mute, and a plea of not guilty was entered in his behalf by the court.

On November 24, 1954, defendant's father, Harry L. Smith, filed a petition in the trial court under MCLA 780.501–780.509; MSA 28.967(1)–28.967(9)[1] praying that the court order a hearing pursuant to the statute to ascertain whether or not the defendant was a criminal sexual psychopathic person. Pursuant to the prayer in the petition and the mandates of the statute, the circuit court appointed three qualified psychiatrists to personally examine the defendant and make and file with the court a report in writing of their

---

[1] Repealed by PA 1968, No. 143.

examinations together with their conclusions. On January 4, 1955, the three psychiatrists filed a six-page report in which they unanimously concluded that defendant was a criminal sexual psychopathic person and recommended that he be committed to the State Hospital Commission for further treatment.

On January 11, 1955, the court conducted a hearing for the purpose of ascertaining whether defendant was a criminal sexual psychopathic person. Upon hearing the testimony of the psychiatrists, and other evidence, the court determined that defendant was a criminal sexual psychopathic person and ordered that he be committed to the State Hospital Commission to be confined in an appropriate state institution until he would be "fully and permanently recovered from such psychopathy, to a degree that he will not be a menace to others as provided for by statute".

Defendant spent the next 18 years confined under maximum security conditions in Ionia State Hospital. Late in 1972, defendant was asked whether he would be willing to be a research subject for experimental psycho-surgery in a project which had been initiated at the Lafayette Clinic in Detroit. He agreed, and in November, 1972, he was transferred to the clinic in Detroit. However, before the conclusions of the tests to determine whether defendant was a proper subject for the psycho-surgery, the experiment became publicly known and a taxpayer suit[2] was instituted in Wayne County Circuit Court to prevent continuation of the experimental project. This suit was filed without defendant's knowledge or consent.

A three-judge court was impanelled to resolve

[2] *John Doe v Department of Mental Health,* Wayne County Civil Action #HC-73-19434-AW.

this matter and prior to consideration of the merits, the court decided that separate counsel should be appointed to represent defendant[3] and 23 others similarly situated. Defendant's court-appointed counsel challenged the constitutionality of the criminal sexual psychopath act under which defendant remained confined. The three-judge court agreed, and on March 23, 1973, issued an opinion holding the act unconstitutional because it violated the Equal Protection Clause of the US Constitution. However, the court did not order defendant's release until April 9, 1973, nearly three weeks after the entry of its opinion.[4] Prior to the entry of that order, the assistant attorney general informed the court in open session that the state, after consideration of all the facts and circumstances of the case, had decided not to institute civil commitment proceedings against the defendant.

On April 6, 1973, defendant's counsel was informed by the Kalamazoo County Prosecuting Attorney that he was considering reinstitution of the 1954 murder charge against defendant. On April 9, 1973, the prosecutor's office filed a petition for a bench warrant in the Kalamazoo County Circuit Court for the arrest of defendant on the 1954 murder charge. On May 3, 1973, defendant filed a motion for hearing on the petition for bench warrant and a motion to quash the information. Following a hearing, the circuit court, on December

[3] Defendant was designated throughout that litigation only as "John Doe" in order to protect him from possible inappropriate publicity surrounding the psycho-surgery experiment and the resultant litigation.

[4] The court had stated in its opinion that there were two courses available concerning the disposition of defendant: "The first is the outright release of John Doe. The second is civil commitment under the appropriate civil commitment statutes." Apparently, the court delayed issuance of a release order until the state could decide whether to institute civil commitment proceedings against defendant.

14, 1973, issued an opinion rejecting defendant's contentions and authorizing a bench warrant. On January 9, 1974, the circuit court ordered a stay of proceedings pending appeal to this Court. This interlocutory appeal followed, leave to appeal having been granted by this Court on March 20, 1974. Although defendant raises four issues on appeal, we find only two which merit decisional discussion. The other issues have been carefully considered and found lacking in substance.

1. *Is the prosecution of defendant on criminal charges pending at the time of his commitment as a criminal sexual psychopathic person barred by § 8 of the relevant statute?*

As previously mentioned, defendant was committed to the Michigan Department of Mental Health under provisions of the then criminal sexual psychopath act. Section 8 of that now-repealed act provided:

"No person who is found in such original hearing to be a criminal sexual psychopathic person and such finding having become final, may thereafter be tried or sentenced upon the offense with which he originally stood charged, or convicted, in the committing court at the time of the filing of the original petition." (MCLA 780.508; MSA 28.967[8])

The trial court found that the ruling on the unconstitutionality of the statute by the Wayne County Circuit Court acted to nullify all effects of the statute since its inception. The trial court thus concluded that defendant was amenable to criminal prosecution and that the above-quoted § 8 was not a bar to such prosecution when it stated:

"It is the opinion of this Court that the finding which

was made at the conclusion of the hearing by this Court was not justified in view of the unconstitutionality of the commitment and release sections of the Criminal Sexual Psychopath Act. Under such circumstances the findings of this Court did not become final within the meaning of Section 8. In the opinion of this Court, this defendant, Louis Smith, may be tried for the offense of murder, with which he originally stood charged at the time of the filing of the petition under the Sexual Psychopath Act."

Defendant contends that the trial court erred in concluding that prosecution of defendant was not barred by § 8 of the statute. We disagree.

In *Horrigan v Klock,* 27 Mich App 107; 183 NW2d 386 (1970), a tort action, a similar immunity question was before this Court. In that case the plaintiff had filed a motion to join the City of Flint as a party defendant on November 20, 1968. The trial court denied the motion because of governmental immunity, MCLA 691.1407; MSA 3.996(107). On June 25, 1969, this Court in *Maki v City of East Tawas,* 18 Mich App 109; 170 NW2d 530 (1969), *aff'd* 385 Mich 151 (1971), declared that statute unconstitutional insofar as it granted immunity to governmental bodies from all tort actions. Thus, the question before the Court in *Horrigan* was what effect the *Maki* decision had on the City of Flint's governmental immunity in that tort action. In resolving this matter in plaintiff's favor and holding that the plaintiff was not barred from joining the City of Flint, as a party defendant, the Court stated:

"The statute was passed by the Legislature in 1964 and became effective in 1965. In the case of *Briggs v Campbell, Wyant & Cannon Foundry Co,* 2 Mich App 204; 139 NW2d 336 (1966), *aff'd,* 379 Mich 169 (1967), the court stated that an unconstitutional statute is void from the date of its passage. Quoting from 16 Am Jur

2d, Constitutional Law, § 177, pp 402–403, the court stated:

" ' "The general rule is that an unconstitutional statute, though having the form and name of law, is in reality no law, but is wholly void, and ineffective for any purpose; since unconstitutionality dates from the time of its enactment, and not merely from the date of the decision so branding it, an unconstitutional law, in legal contemplation, is as inoperative as if it had never been passed." ' 2 Mich App 204, 218.

"Resultingly, the decision of this Court in *Maki, supra,* is fully retroactive and the statute declared unconstitutional there was void on the date it was passed. As a result, the trial court, through no fault of its own, erred when it did not permit the plaintiff to join the City of Flint as a party defendant. The city did not enjoy any immunity under the void statute."

Such is the case here. The decision by the three-judge Wayne County Circuit Court declaring the statute in controversy in this case unconstitutional is also fully retroactive. Thus, the statute was void on the date it was passed. The defendant, therefore, did not enjoy any immunity from prosecution under the void statute, and the trial court's conclusion that prosecution of defendant was not barred by § 8 of the statute was proper.

2. *Does prosecution of defendant 19 years after an alleged homicide deny him his constitutional right to a speedy trial?*[5]

In *Barker v Wingo,* 407 US 514; 92 S Ct 2182; 33 L Ed 2d 101 (1972), the United States Supreme Court enunciated a general rule applicable to speedy trial cases, which our Supreme Court has recognized as the test to be applied in this area. *People v Hall,* 391 Mich 175, 183; 215 NW2d 166

---

[5] US Const, Am VI; Const 1963, art 1, § 20.

(1974); *People v Chism,* 390 Mich 104, 111; 211 NW2d 193 (1973); *People v Collins,* 388 Mich 680, 688; 202 NW2d 769 (1972); *People v Grimmett,* 388 Mich 590, 602; 202 NW2d 278 (1972). The United States Supreme Court formulated this rule in the following manner:

"A balancing test necessarily compels courts to approach speedy trial cases on an ad hoc basis. * * * Though some might express them in different ways, we identify four such factors: Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." 407 US 514, 530.

### A. Length of Delay

As indicated earlier, the length of delay in this case is 19 years. However, the length of delay, standing by itself, is not determinative. It must be balanced with the other factors since long delays are not by themselves a denial of the constitutional right to a speedy trial. *People v Edwards,* 55 Mich App 256, 261; 222 NW2d 203 (1974); *People v Classen,* 50 Mich App 122; 212 NW2d 783 (1973). Since a six-month delay is presumptively prejudicial, we must also examine the remaining factors. MCLA 767.38; MSA 28.978; MCLA 780.131; MSA 28.969(1); *People v Chism, supra; People v Collins, supra.*

### B. Reason for the Delay

In its opinion, the trial court found that although the delay in this case was "a very long period of time", such delay was explainable by the events of the case. In concluding that there was a valid reason justifying the delay, the trial court stated:

"The reason for the delay in the instant case was the statutory bar to prosecution which existed until such

time as the commitment of this Defendant was held improper because of the unconstitutionality of the statute. This was not a deliberate attempt upon the part of the prosecution to delay the trial, nor was it negligence, nor was it because of overcrowded court conditions. It is the opinion of this Court that there was a very valid reason for the delay."

We agree. The unfortunate lengthy delay in this case cannot be attributed to any deliberate attempt to hamper the defense, nor was the cause for delay the fault of the prosecutor. Quite simply, the reason for the delay is justified because the delay was beyond the control of the prosecutor. It should be pointed out that at no time was the warrant or criminal charge pending against the defendant dismissed during the intervening 19 years. Furthermore, the fact that the motion for a bench warrant was filed in the circuit court almost immediately after defendant's release is an indication that the prosecutor moved promptly in his attempt to bring this matter to trial after the decision of the Wayne County Circuit Court declared the statute in controversy unconstitutional. Under these circumstances, we conclude that the delay in this case was justifiable.

### C. Assertion of Right

The trial court found that defendant never asserted his right to a speedy trial, but rather relied upon the statutory bar to prosecution. However, in *People v Grimmett, supra,* and *People v Collins, supra,* our Supreme Court overruled prior Michigan decisions[6] insofar as they held that a demand by the defendant for trial was a prerequisite to the assertion of the right to a speedy trial. See *People v Hall, supra,* at p 184. Since, under our present

[6] *People v Duncan,* 373 Mich 650; 130 NW2d 385 (1964); *People v Miklovich,* 375 Mich 536; 134 NW2d 720 (1965).

rule a defendant's demand for a speedy trial is only one of the factors looked at by the Court in determining whether this right was violated, we proceed to consider the last of the four factors mentioned above.

### D. Prejudice to the Defendant

Concerning this factor, the Michigan Supreme Court, in *Grimmett, supra,* concluded that the speedy trial right was designed to protect three interests of the defendant: (1) prevention of oppressive pretrial incarceration, (2) minimization of anxiety and concern of the accused, (3) limitation of the possibility that the defense will be impaired. Impairment of the defense is most serious, "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system". *Barker,* 407 US 514, 532.

As to these interests, the pretrial incarceration in this case was the result of the petition filed by defendant's father requesting that defendant be committed under the provisions of the criminal sexual psychopath act. Furthermore, there has been no anxiety or concern upon the part of the accused during his confinement because he had relied upon the alleged protection of § 8 of the act.

Finally, we are not impressed with defendant's claim that his defense was impaired by this delay and conclude that said claim is not well founded. We have no claim that any of defendant's witnesses have died or otherwise become unavailable owing to the delay. While it may be true that the prosecutor might be unable to prove his case after this lengthy delay, that is a question that must be decided by a jury upon trial of the defendant. We find that the ability of the defendant to present his defense has in no significant way been prejudiced by the delay.

In summary, a review and balancing of the four factors stated above leads this Court to conclude that defendant was not denied his constitutional right to a speedy trial in this case. The delay was due to the fact that defendant had been committed under the criminal sexual psychopath act and was thus immune from prosecution until that act was declared unconstitutional by the Wayne County Circuit Court. While such a lengthy delay is regrettable, it was unavoidable under the facts of this case. Furthermore, we do not find that any prejudice to defendant's defense resulted from this delay. Therefore, dismissal is not warranted.

For the reasons set forth above, the judgment of the lower court is affirmed.

All concurred.