PEOPLE v SMITH

Docket No. 56620. Argued March 7, 1978 (Calendar No. 1).—Decided
    February 5, 1979.

Louis M. Smith was charged in 1954 with the first-degree murder
    of Marilyn Kraai, a student nurse, at the Kalamazoo State
    Hospital. A plea of not guilty was entered and he was commit-
    ted to Ionia State Hospital on a petition as a criminal sexual
    psychopath. In 1973 a three-judge panel in Wayne Circuit
    Court ruled that the detention of the defendant as a criminal
    sexual psychopath was unconstitutional. A bench warrant was
    issued in Kalamazoo Circuit Court, Raymond W. Fox, J., on the
    murder charge. After a series of interlocutory appeals, a jury in
    Kalamazoo Circuit Court, Robert L. Borsos, J., convicted the
    defendant of second-degree murder. Defendant appeals. *Held:*

    1. The intent of criminal sexual psychopath statutes was to
    provide civil commitment, segregation and treatment of sexual
    psychopathic persons rather than criminal punishment, the
    ineffectiveness of which, as a deterrent, had been demonstrated
    in the behavior of a number of recidivist sex offenders. The
    statutes manifested legislative recognition that sexual psycho-
    paths presented a different or unique criminal problem and,
    therefore, should be distinguished from and treated differently
    than the ordinary class of criminals. The Michigan statute was
    unique in barring prosecution of a charge pending against a
    defendant at the time he was adjudged a criminal sexual
    psychopath. The defendant focuses on the statutory bar and
    argues that once the final determination of psychopathy was
    made, the state is prohibited from prosecuting him regardless
    of what may occur. The prosecutor argues that the decision
    holding the criminal sexual psychopath act unconstitutional
    wholly voided it from its inception, including the bar to prose-
    cution, and the lower courts agreed.

    2. The traditional notion that a statute declared unconstitu-

REFERENCES FOR POINTS IN HEADNOTES
[1, 2, 3, 9-11] 41 Am Jur 2d, Incompetent Persons § 49.
    Statutes relating to sexual psychopaths. 24 ALR 2d 350.
[3, 4, 7] 16 Am Jur 2d, Constitutional Law § 177.
[5, 6] 16 Am Jur 2d, Constitutional Law § 178.
[12] 1 Am Jur 2d, Actions § 49.

tional is in law a nullity from its inception is a legal fiction of judge-made origin which serves to supply logical symmetry to judicial declarations that a specific legislative pronouncement was beyond legislative capacity. It is not a rule without exceptions, however. Like all rules of law its wooden application, resulting in fundamental injustice, is intolerable.

3. The actual existence of a statute, prior to a determination that it is unconstitutional, is an operative fact and may have consequences which cannot justly be ignored. The past cannot always be erased by a new judicial declaration. The effect of the subsequent ruling as to invalidity may have to be considered in various aspects. Questions of rights claimed to have become vested, of status, of prior determinations deemed to have finality and acted upon accordingly, of public policy in the light of the nature both of the statute and of its previous application, demand examination. An all-inclusive statement of a principle of absolute retroactive invalidity cannot be justified. There is no compelling reason to confine the modern approach of excepting extraordinary cases from the traditional rule of retroactivity to those constitutional cases involving criminal procedure or municipal bonds.

4. The extraordinary facts and circumstances of this case comprise a classic example of justification for departure from the general rule of total *ab initio* nullity applied in the courts below. The sexual psychopath statutes provided an unequivocal legislative declaration that persons finally adjudged criminal sexual psychopaths would be forever insulated from the punitive sanctions normally imposed for criminal conduct. The theory was that because of their mental condition such persons should not be classed as criminals in the ordinary sense of the term nor subjected to punishment as such for acts resulting from their psychopathic condition or mental disorder. The legislation expressed a considered public policy that persons adjudged sexual psychopaths were less culpable for their actions because of their mental disorder and therefore would not be punished as criminals in the ordinary sense.

5. The State of Michigan assured Louis Smith that if he was finally adjudged a criminal sexual psychopath upon a hearing in which he would be denied the exercise of virtually the whole panoply of constitutional protections which were otherwise his as a defendant in a criminal prosecution, which afforded him fewer protections than those extended to one whose commitment is sought as a mentally ill person and which could result in his confinement in a mental institution for an indefinite

term, conceivably the rest of his life, he would never be "tried or sentenced upon the offense with which he originally stood charged". The judgment made in 1955 that the defendant was a sexual psychopath was deemed to be final and was acted upon accordingly. The defendant was given the status of a criminal sexual psychopathic person and for 18 years was confined in a mental hospital in consequence, until he was released by the Wayne Circuit Court.

6. The argument which relies upon the legal fiction that since the act was a nullity from its inception, the state's assurance to the defendant that he would never be tried or sentenced is likewise a nullity, would require that the solemn promise of the sovereign be broken in the name of constitutional construction. That result comports neither with traditional notions of fundamental fairness in the classic constitutional sense, nor the more elemental and compelling principles of fundamental human justice rooted in the natural law. A more classic case of status established and prior determinations deemed to have finality and acted upon accordingly than this one would be hard to imagine.

7. The defendant's status as an adjudicated criminal sexual psychopath inheres in him. It cannot be erased, or forgotten, or undone, any more than can his 18 years of confinement. The permanent bar to prosecution under the statute is in every sense of the word an inextricable part of that status and similarly cannot be erased, forgotten or undone. It, too, inheres in him. It is the Court's duty to enforce it. This is a case without precedent and very likely without duplicate hereafter. It calls for the Court to eschew familiar legal formulae and declare simply and clearly what justice requires and why.

The decisions of the courts below are reversed, the conviction vacated, and the defendant discharged forthwith.

57 Mich App 556; 226 NW2d 673 (1975) reversed.

1. CRIMINAL LAW — CRIMINAL SEXUAL PSYCHOPATHIC PERSONS — MENTAL HEALTH — STATUTES.

The intent of the statutes concerning criminal sexual psychopathic persons was to provide civil commitment, segregation and treatment of them rather than criminal punishment; the statutes manifested legislative recognition that sexual psychopaths presented a different or unique criminal problem and as such should be distinguished from and treated differently than the ordinary class of criminals (MCL 780.501 *et seq.;* MSA 28.967[1] *et seq.).*

2. CRIMINAL LAW — CRIMINAL SEXUAL PSYCHOPATHIC PERSONS —
   MENTAL HEALTH — STATUTES.

   The Legislature sought by adoption of the statutes concerning
   criminal sexual psychopathic persons to provide for the protec-
   tion of the public against persons who, while not insane or
   feebleminded, present a serious problem; the method prescribed
   for the care and treatment of such persons rests on the theory
   that because of their mental condition they should not be
   classed as criminals in the ordinary sense of the term, nor
   subjected to punishment for acts resulting from a psychopathic
   condition or mental disorder (MCL 780.501 *et seq.;* MSA
   28.967[1] *et seq.).*

3. STATUTES — CONSTITUTIONAL LAW — VOID AB INITIO.

   The traditional notion that a statute which is declared unconsti-
   tutional is in law a nullity from its inception is a legal fiction of
   judge-made origin which serves to supply logical symmetry to
   judicial declarations that a specific legislative pronouncement
   was beyond legislative capacity.

4. STATUTES — CONSTITUTIONAL LAW — VOID AB INITIO.

   The rule that the invalidity of an unconstitutional law dates from
   the time of enactment is not without exceptions; like all rules
   of law its wooden application, resulting in fundamental injus-
   tice, is intolerable.

5. STATUTES — CONSTITUTIONAL LAW — VOID AB INITIO.

   The actual existence of a statute, prior to a judicial determina-
   tion that it is unconstitutional, is an operative fact and may
   have consequences which cannot justly be ignored; the past
   cannot always be erased by a new judicial declaration.

6. STATUTES — CONSTITUTIONAL LAW — VOID AB INITIO.

   The effect of a judicial ruling as to the constitutional invalidity of
   a statute may have to be considered in various aspects, with
   respect to particular relations, individual and corporate, and
   particular conduct, private and official; questions of rights
   claimed to have become vested, of status, of prior determina-
   tions deemed to have finality and acted upon accordingly, of
   public policy in the light of the nature both of the statute and
   of its previous application, demand examination.

7. STATUTES — CONSTITUTIONAL LAW — VOID AB INITIO.

   Statutory and judge-made rules of law are hard facts on which
   people must rely in making decisions and in shaping their
   conduct; extraordinary facts and circumstances of a case may
   justify departure from the general rule of total *ab initio* nullity

applied in the courts to a statute which is declared unconstitutional.

8. CRIMINAL LAW — CRIMINAL SEXUAL PSYCHOPATHIC PERSONS — MENTAL HEALTH — STATUTES.

The Legislature unequivocally declared that persons who were finally adjudged criminal sexual psychopaths would be forever insulated from the punitive sanctions normally imposed for criminal conduct; the Legislature expressed a considered public policy that persons adjudged as sexual psychopaths were less culpable for their actions because of their mental disorder and therefore would not be punished as criminals in the ordinary sense (MCL 780.508; MSA 28.967[8]).

9. CRIMINAL LAW — CRIMINAL SEXUAL PSYCHOPATHIC PERSONS — CONSTITUTIONAL LAW — STATUTES.

The State of Michigan assured a defendant who had been charged with murder that if he was finally adjudged a criminal sexual psychopath upon a hearing in which he would be denied the exercise of virtually the whole panoply of constitutional protections which were otherwise his as a defendant in a criminal prosecution, which afforded him fewer protections than those extended to one whose commitment is sought as a mentally ill person and which could result in his confinement in a mental institution for an indefinite term, conceivably the rest of his life, he would never be tried or sentenced upon the offense with which he originally stood charged; an effort to prosecute him for the murder 18 years later, after the statute under which his confinement was ordered was declared to be unconstitutional, comports neither with traditional notions of fundamental fairness in the classic constitutional sense, nor the more elemental and compelling principles of fundamental justice rooted in the natural law (MCL 780.508; MSA 28.967[8]).

10. CRIMINAL LAW — CRIMINAL SEXUAL PSYCHOPATHIC PERSONS — CONSTITUTIONAL LAW — STATUTES.

The solemn promise, in the criminal sexual psychopath act, of the state to an accused that he would never be tried or sentenced for the crime charged should not be broken in the name of constitutional construction after the act has been declared to be unconstitutional (MCL 780.508; MSA 28.967[8]).

11. CRIMINAL LAW — CRIMINAL SEXUAL PSYCHOPATHIC PERSONS — CONSTITUTIONAL LAW — STATUTES.

The status of an accused as an adjudicated criminal sexual psychopathic person inheres in him and cannot be erased, or

forgotten or undone, any more than can 18 years of confine-
ment thereunder; the permanent bar to prosecution in the
criminal sexual psychopath act is an inextricable part of that
status and it is the duty of the courts to enforce it (MCL
780.508; MSA 28.967[8]).

12. COURTS — JURISPRUDENCE — COMMON LAW.
    A court, when faced with a case without precedent and very
    likely without duplicate thereafter, must eschew familiar legal
    formulae, if they do not neatly dispose of the unusual facts
    before the court, and declare simply and clearly what justice
    requires and why.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *James J. Gregart,* Prosecuting Attorney, and *Stephen M. Wheeler,* Chief of Appellate Division, for the people.

*DeVries & Lamb, P.C.,* for defendant.

RYAN, J. On February 5, 1954, defendant Louis Maurice Smith, then 18 years of age, was committed to the Kalamazoo State Hospital following a series of relatively minor acts of sexual misconduct such as indecent exposure, window peeping and stealing articles of feminine apparel. Eight months after defendant's commitment a student nurse was found raped and strangled to death in the basement of the hospital. That same day, November 5, 1954, defendant was arrested and charged with her murder.

On November 17, 1954, a preliminary examination was conducted at which the evidence, including the defendant's confession, indicated that the crime of murder had been committed and that there was probable cause to believe the defendant committed it. As a result, the defendant was bound over to the circuit court for further proceedings on the charge of murder.

On November 22, 1954, Smith was arraigned

upon the information in the circuit court on the murder charge. He stood mute and a plea of not guilty was entered in his behalf by the court.

Shortly after defendant's arraignment on the charge of murder his father filed a petition under MCL 780.501-780.509; MSA 28.967(1)-28.967(9), hereinafter known as the Criminal Sexual Psychopath Act, or the CSP act,[1] praying that the court

---

[1] Repealed by 1968 PA 143. Because we are persuaded it will be of assistance to the reader, we reluctantly burden the case report by reproducing the now repealed Criminal Sexual Psychopath Act as it read in Compiled Laws of 1948.

"Sec. 1. Any person who is suffering from a mental disorder and is not insane or feeble-minded, which mental disorder has existed for a period of not less than 1 year and is coupled with criminal propensities to the commission of sex offenses is hereby declared to be a criminal sexual psychopathic person.

"Sec. 2. Jurisdiction of criminal sexual psychopathic persons charged with criminal offense is vested in the circuit courts of the state, the recorders court of the city of Detroit, and the superior court of the city of Grand Rapids.

"Sec. 3. When any person is charged with a criminal offense, or has been convicted of or has pleaded guilty to such offense and has been placed on probation, or has been convicted or pleaded guilty to such offense but has not yet been sentenced, and it shall appear that such person is a criminal sexual psychopathic person, then the prosecuting attorney of such county, or the attorney general, or some one on behalf of the person charged, may file with the clerk of the court in the same proceeding wherein such person stands charged with, or has been convicted of, or has pleaded guilty to such criminal offense, a statement in writing setting forth facts tending to show that such person is a criminal sexual psychopathic person.

"Sec. 4. Upon the filing of such statement by the prosecuting attorney or the attorney general the court shall, or if filed on behalf of the accused the court may, appoint 2 qualified psychiatrists to make a personal examination of such alleged criminal sexual psychopathic person who shall file with the court a report in writing of the results of their examination together with their conclusions. Said report shall be open to the inspection of the counsel for the accused, but shall not be competent evidence in any other proceeding against accused except the hearing to inquire into his alleged psychopathy. Said alleged psychopath shall be required to answer the questions propounded by such psychiatrists under penalty of contempt of court. In the event that both of such psychiatrists in such report state their conclusions to the effect that such person is a criminal sexual psychopathic person, then proceedings shall be had as provided in this act prior to a trial of such person upon the criminal offense with which he then stands charged, or prior to sentence if he then stands

convicted and has not been placed on probation, or prior to completion of probation sentence.

"Sec. 5. Upon a hearing held for that purpose the court without a jury, unless a jury is demanded prior to said hearing and within 15 days after the filing of the last of said reports, shall ascertain whether or not such person is a criminal sexual psychopathic person. Upon such hearing it shall be competent to introduce evidence of the commission by such person of any number of similar crimes together with the record of the punishment inflicted therefor. If such person is determined to be a criminal sexual psychopathic person, then the court shall commit such person to the state hospital commission to be confined in an appropriate state institution under the jurisdiction of either the state hospital commission or the department of corrections until such person shall have fully and permanently recovered from such psychopathy.

"Sec. 6. The state hospital commission shall have the right to release such person upon parole to such persons and under such conditions as his condition, in the judgment of the state hospital commission, merits.

"Sec. 7. Such criminal sexual psychopathic person shall be discharged only after he shall have fully recovered from such psychopathy. At any time, when he shall appear to have so recovered, a petition in writing setting forth the facts showing such recovery may be filed with the clerk of the court by which he was committed and such court shall proceed to determine whether or not he has fully recovered from such psychopathy. Jury trial of such issue may be had, if demanded before the trial of said issue and within 15 days after the filing of such petition. If, following such hearing, such person is found to have fully recovered from such psychopathy, then the court shall order such person to be discharged from the custody of the state hospital commission. In the event such person is found to have not fully recovered from such psychopathy, then the court shall order such person to be returned to the custody of the state hospital commission to be held under the previous commitment of such person.

"As long as such psychopath shall remain in the custody of the department of mental health of the commission he shall be examined at least once a year by 2 psychiatrists appointed by the commission who shall report in writing their findings including therein any facts tending to show appearance of recovery, to the committing court and to the commission. These reports shall thereafter be available to such committed person's attorney for use in petitions for discharge, and also as evidence at any hearings on such petitions if so requested by petitioner, by the prosecutor or by the court.

"Sec. 8. No person who is found in such original hearing to be a criminal sexual psychopathic person and such finding having become final, may thereafter be tried or sentenced upon the offense with which he originally stood charged, or convicted, in the committing court at the time of the filing of the original petition.

"Sec. 9. The state shall defray all expenses of such person while so confined in a state institution and may recover the amount so paid from such person."

conduct a hearing to determine whether the defendant was a criminal sexual psychopathic person. The court granted the petition and appointed three qualified psychiatrists to examine the defendant and file with the court a written report of their examinations together with their conclusions. In due course the report was filed in which the psychiatrists unanimously concluded that defendant was a criminal sexual psychopathic person and recommended that he be committed to the state hospital commission for treatment.

After considering the psychiatric report, expert testimony and other evidence, the court determined that defendant was a criminal sexual psychopathic person and, pursuant to §§ 5 and 7 of the Criminal Sexual Psychopath Act, ordered him to be committed to the state hospital commission to be confined in an appropriate state institution until fully and permanently recovered from such psychopathy to a degree that he would not be a menace to others.

Based upon the determination that defendant was a criminal sexual psychopathic person, the criminal action then pending against defendant was barred by § 8 of the act.

Defendant spent the next 18 years confined under maximum security conditions in Ionia State Hospital. During this period of confinement the criminal sexual psychopath statute was repealed by 1968 PA 143. Pursuant to § 1 of Act 143, persons who had been committed by a criminal court as criminal sexual psychopaths under the provisions of the former act remained confined in state institutions under the jurisdiction of the state Department of Mental Health. By Administrative Order 1969-4, this Court continued the release provisions of § 7 of the Criminal Sexual Psychopath Act.

In 1972, defendant was asked whether he would be willing to be a research subject for experimental psychosurgery in a project which had been initiated at the Lafayette Clinic in Detroit. He agreed and shortly thereafter was transferred to the clinic. Before the experimental treatment had actually begun, the project became publicly known and a taxpayer suit[2] was instituted in Wayne Circuit Court to prevent its continuation. Defendant, designated as John Doe in order to protect him from inappropriate publicity, was the named plaintiff in the action.

A three-judge trial court was impanelled to resolve the matter. Prior to consideration on the merits, the court appointed counsel to represent defendant and 23 others similarly situated. Among other things, defendant's court-appointed counsel challenged the constitutionality of the Criminal Sexual Psychopath Act under which defendant was committed. The three-judge court found merit in the challenge and concluded that John Doe was unconstitutionally detained. Essentially, the court reasoned that the standards for commitment under the Criminal Sexual Psychopath Act were less stringent than the standards otherwise applicable for commitment civilly, and the standards for release under the former act were more stringent than for release under the latter. The court concluded that the differences in the standards did not meet the requirements of present day Fourteenth Amendment equal protection. Accordingly, the detention of John Doe was held to be unconstitutional.

Despite finding his commitment unconstitutional, the court did not order defendant's release

[2] *John Doe v Dep't of Mental Health,* Wayne County Civil Action (Docket No. HC-73-19434-AW).

until April 9, 1973, nearly three weeks after the entry of its opinion. Prior to the entry of the release order, the assistant attorney general informed the court that the state, after consideration of all the facts and circumstances in the case, had decided not to institute civil commitment proceedings against the defendant.

On the date the Wayne Circuit Court issued the order releasing defendant from his commitment, the prosecutor's office for Kalamazoo County filed a petition for a bench warrant in the circuit court for the County of Kalamazoo to apprehend and return defendant to Kalamazoo for disposition of the murder charge.

On May 3, 1973, defendant filed a motion for hearing on the petition for bench warrant and a motion to quash the information. The motions were based upon the contention that the reinstitution of criminal proceedings based upon the 1954 homicide was barred by § 8 of the repealed Criminal Sexual Psychopath Act and that the prosecution would violate defendant's right to a speedy trial. Following a hearing, the Kalamazoo Circuit Court, on December 14, 1973, issued an opinion rejecting defendant's contentions and authorizing a bench warrant. On January 9, 1974, at the request of the defendant and upon stipulation of the people, the trial court entered an order staying the proceedings in this case until a decision was made by the Court of Appeals. On January 8, 1975, the Court of Appeals affirmed the judgment of the circuit court. 57 Mich App 556; 226 NW2d 673 (1975).

Thereafter, the people moved to discharge the stay of proceedings. Defendant, on February 10, 1975, petitioned this Court for immediate consideration of the issue. Meanwhile, the trial proceeded

through the normal course of motions, hearings and pleadings. On February 12, 1976, this Court rendered an order allowing trial to continue in the matter. 396 Mich 955 (1976).

On February 14, 1976, trial commenced in the circuit court for the County of Kalamazoo. The sole defense asserted at trial was that of insanity. The jury rejected the insanity defense and found the defendant guilty of second-degree murder.

Pursuant to the order rendered by this Court on February 12, 1976, defendant appeals directly to this Court. Appellant's principal contention is that § 8 of the CSP act prohibited the state from trying him for the 1954 homicide.

Statutes designed to cope with sex offenders, who because of a psychopathic condition commit or have the propensity to commit such offenses, developed in the late 1930's and 1940's. The intent of such statutes was to provide civil commitment, segregation and treatment of sexual psychopathic persons rather than criminal punishment, the ineffectiveness of which, as a deterrent, had been demonstrated in the behavior of a number of recidivist sex offenders. The statutes manifested legislative recognition that sexual psychopaths presented a different or unique criminal problem and as such should be distinguished from and treated differently than the ordinary class of criminals. As expressed in *People v Piasecki,* 333 Mich 122, 142; 52 NW2d 626 (1952):

"By the adoption of the act here in question the legislature sought to provide for the protection of the public against persons who, while not insane or feeble-minded, present a serious problem. The method prescribed for the care and treatment of such persons rests on the theory that because of their mental condition they should not be classed as criminals in the ordinary

sense of the term, nor subjected to punishment as such for acts resulting from the psychopathic condition or mental disorder."

The criminal sexual psychopath statutes enacted in various jurisdictions were substantially the same, particularly with respect to their definition of a criminal sexual psychopathic person. Essentially, a sexual psychopath was defined as a person who, while not insane or feeble-minded, had a mental disorder coupled with propensities toward the commission of criminal sex offenses. Although the various sexual psychopath statutes were substantially consistent in defining a sexually psychopathic person, they diverged somewhat in delineating the effect the adjudication of psychopathy had upon the underlying or pending criminal charge. For instance, some jurisdictions enacted sexual psychopath statutes under which criminal proceedings were abeyant until such time as the defendant was discharged from hospitalization.[3] Other states had statutes which provided that a condition of sexual psychopathy did not constitute a defense to a criminal charge nor did it abrogate defendant's liability to be tried for the offense.[4] Michigan's statutory approach to a conviction or charge pending against a defendant at the time he was adjudged to be a criminal sexual psychopath was unique among those states adopting sexual psychopath statutes because of the bar-to-prosecution provision of § 8.

In the case before us defendant focuses upon this unique statutory bar and argues that he was

[3] See, *e.g., In re Stone,* 87 Cal App 2d 777; 197 P2d 847 (1948); *People v Sims,* 382 Ill 472; 47 NE2d 703 (1943).

[4] See, *e.g., State ex rel Pearson v Ramsey County Probate Court,* 205 Minn 545; 287 NW 297 (1939), *aff'd* 309 US 270; 60 S Ct 523; 84 L Ed 744 (1940).

finally adjudged a criminal sexual psychopathic person, the consequences of which inhere in him. He concludes that once the final determination of psychopathy was made, the state is prohibited from prosecuting him regardless of what may occur in the future.

In opposition, the prosecutor argues that the Wayne circuit decision in *John Doe v Dep't of Mental Health* wholly voided the Criminal Sexual Psychopath Act and nullified all effects of the statute since its inception. The courts below agreed with the prosecutor's conclusion, noting that under generally applicable legal principles an unconstitutional law is, in legal contemplation, inoperative as if it had never been passed. Accordingly, the Court of Appeals affirmed the trial court's ruling that § 8 of the repealed CSP act did not prohibit the prosecution of defendant on the 1954 murder charge. 57 Mich App 556; 226 NW2d 673 (1975).

The traditional notion that a statute declared unconstitutional is in law a nullity from its inception is a legal fiction of judge-made origin which serves to supply logical symmetry to judicial declarations that a specific legislative pronouncement was beyond legislative capacity.

In the early case of *Norton v Shelby County,* 118 US 425, 442; 6 S Ct 1121; 30 L Ed 178 (1886), the United States Supreme Court declared that "[a]n unconstitutional statute * * * confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed". This Court recognized the same principle in *Briggs v Campbell, Wyant & Cannon Foundry Co,* 379 Mich 160, 165; 150 NW2d 752 (1967), observing "an unconstitutional statutory provision though in form and name a law is from the beginning no law

at all; * * * the invalidity thereof dates from the time of enactment * * * and * * * such a provision is at no time effective for any purpose".

It is not a rule without exceptions, however. Like all rules of law its wooden application, resulting in fundamental injustice, is intolerable.

In the recent case of *Lemon v Kurtzman,* 411 US 192; 93 S Ct 1463; 36 L Ed 2d 151 (1973), the United States Supreme Court acknowledged approvingly its repeated departure from its own early nullity *ab initio* view in *Norton, supra.* After citing a litany of the criminal cases in which newly declared constitutional rights for the protection of defendants have been declared to have no retroactive application, and civil cases in which electoral laws and municipal financing statutes have been struck down while the effect of actions taken under them is upheld, the Court cited the case of *Chicot County Drainage Dist v Baxter State Bank,* 308 US 371, 374; 60 S Ct 317; 84 L Ed 329 (1940), in which former Chief Justice Hughes wrote:

"It is quite clear, however, that such broad statements as to the effect of a determination of unconstitutionality must be taken with qualifications. The actual existence of a statute, prior to such a determination, is an operative fact and may have consequences which cannot justly be ignored. The past cannot always be erased by a new judicial declaration. The effect of the subsequent ruling as to invalidity may have to be considered in various aspects—with respect to particular relations, individual and corporate, and particular conduct, private and official. Questions of rights claimed to have become vested, of status, of prior determinations deemed to have finality and acted upon accordingly, of public policy in the light of the nature both of the statute and of its previous application, demand examination. These questions are among the most diffi-

cult of those which have engaged the attention of courts, state and federal, and it is manifest from numerous decisions that an all-inclusive statement of a principle of absolute retroactive invalidity cannot be justified."

Finally, the *Lemon* Court observed:

"However appealing the logic of *Norton* may have been in the abstract, its abandonment reflected our recognition that statutory or even judge-made rules of law are hard facts on which people must rely in making decisions and in shaping their conduct. This fact of legal life underpins our modern decisions recognizing a doctrine of nonretroactivity. Appellants offer no persuasive reason for confining the modern approach to those constitutional cases involving criminal procedure or municipal bonds, and we ourselves perceive none."

Like the United States Supreme Court, we perceive no compelling reason to confine the modern approach of excepting extraordinary cases from the traditional rule of retroactivity to those "constitutional cases involving criminal procedure or municipal bonds * * *".

We find the extraordinary facts and circumstances of the case before us to comprise a classic example of justification for departure from the general rule of total *ab initio* nullity applied in the courts below.

Section 8 of the since repealed Criminal Sexual Psychopath Act provides:

"No person who is found in such original hearing to be a criminal sexual psychopathic person and such finding having become final, may thereafter be tried or sentenced upon the offense with which he originally stood charged, or convicted, in the committing court at the time of the filing of the original petition."

This provision is an unequivocal legislative declaration that persons finally adjudged criminal sexual psychopaths would be forever insulated from the punitive sanctions normally imposed for criminal conduct. The theory was that because of their mental condition such persons should not be classed as criminals in the ordinary sense of the term nor subjected to punishment as such for acts resulting from their psychopathic condition or mental disorder. *People v Piasecki, supra,* at 142. The legislation expressed a considered public policy that persons adjudged sexual psychopaths were less culpable for their actions because of their mental disorder and therefore would not be punished as criminals in the ordinary sense.

In support of that policy, the State of Michigan assured Louis Smith that if he was finally adjudged a criminal sexual psychopath upon a hearing in which he would be denied the exercise of virtually the whole panoply of constitutional protections which were otherwise his as a defendant in a criminal prosecution, which afforded him fewer protections than those extended to one whose commitment is sought as a mentally ill person and which could result in his confinement in a mental institution for an indefinite term, conceivably the rest of his life, that he would never be "tried or sentenced upon the offense with which he originally stood charged * * *".

Such an adjudication was made in January, 1955. The determination was deemed to be final and was acted upon accordingly. Smith was given the status of a criminal sexual psychopathic person and for 18 years was confined in a mental hospital in consequence of the imposition of such status, until he was released by the trial court which found his confinement to have been ordered

under an unconstitutional statute. There then ensued an effort to prosecute him for the homicide committed 18 years earlier.

In opposing Smith's request that the bar of § 8 of the Criminal Sexual Psychopath Act be enforced, the prosecutor relies upon the legal fiction that since the act was a nullity from its inception, the state's assurance to Smith that he would never be tried or sentenced is likewise a nullity. Thus the solemn promise of the sovereign is broken in the name of constitutional construction.

We think that comports neither with traditional notions of fundamental fairness in the classic constitutional sense, nor the more elemental and compelling principles of fundamental human justice rooted in the natural law. A more classic case of "status" established and "prior determinations deemed to have finality and acted upon accordingly", of which Justice Hughes wrote in *Chicot,* than the one before us would be hard to imagine.

Smith's status as an adjudicated criminal sexual psychopath inheres in him. It cannot be erased, or forgotten, or undone, any more than can his 18 years of confinement thereunder. They are for all time a reality of his life. The § 8 permanent bar to prosecution is in every sense of the word an inextricable part of that status and similarly cannot be erased, forgotten or undone. It, too, inheres in him. It is our duty to enforce it.

We do not undertake to fit today's decision into any of the conveniently familiar constitutional pigeonholes such as double jeopardy, speedy trial, collateral estoppel, due process or the like. Those constitutional doctrines do not neatly dispose of the unusual facts before us.

This is the occasional aberrant case which leaves lawyers and judges groping for familiar legalese

with which to tag it and in search of a familiar doctrinal groove into which it might fit. In truth, none exist. It is a case without precedent and very likely without duplicate hereafter. It calls for this Court to eschew familiar formulae and declare simply and clearly what justice requires and why.

For the reasons stated, we declare that it requires that the decision of the Court of Appeals be reversed and Louis Smith's conviction be vacated and that he be discharged from custody forthwith.

COLEMAN, C.J., and KAVANAGH, WILLIAMS, LEVIN, FITZGERALD, and BLAIR MOODY, JR., JJ., concurred with RYAN, J.