PEOPLE v WILLIAMS

Docket No. 200324. Submitted November 6, 1997, at Grand Rapids. Decided March 13, 1998, at 9:00 A.M. Leave to appeal sought.

Theodore G. Williams pleaded guilty in 1967 in the Allegan Circuit Court to a charge of open murder following the rape and killing of a child. The court chose to convict the defendant of first-degree murder and, pursuant to a presentencing petition filed under the criminal sexual psychopath act (CSPA), 1939 PA 165, as amended by 1952 PA 58, MCL 780.501 *et seq.*; MSA 28.967(1) *et seq.*, defendant was committed to the Ionia State Hospital. The act was repealed by 1966 PA 267 and 1968 PA 143. By Administrative Order No. 1969-4, the Supreme Court directed trial courts to continue to hear discharge petitions pursuant to § 7 of the CSPA, MCL 780.507; MSA 28.967(7). In 1973, the defendant was transferred to, and discharged from, the Kalamazoo State Hospital. In 1977, the Allegan County prosecutor refiled criminal charges against the defendant. The defendant pleaded guilty of second-degree murder and was sentenced to life imprisonment. In 1978, the Court of Appeals reversed the second-degree murder conviction, holding that § 8 of the CSPA, MCL 780.508; MSA 28.967(8), barred trial and conviction for the offense for which one found to be a criminal sexual psychopath originally stood charged. Unpublished opinion per curiam, issued June 21, 1978 (Docket No. 77-698). The Supreme Court affirmed the reversal, but ordered confinement of the defendant by the Department of Mental Health until discharge pursuant to § 7 of the CSPA. 406 Mich 990 (1979). The Supreme Court remanded the matter to the Allegan Circuit Court to allow the defendant to file a discharge petition and to permit the lower court to determine whether the defendant can be released pursuant to § 7 of the CSPA. 407 Mich 912 (1979). The defendant filed numerous discharge petitions, which were all denied either by the circuit court or a jury. The defendant sought leave in the Court of Appeals to appeal one such denial by the circuit court, George R. Corsiglia, J. The Court of Appeals denied leave. The Supreme Court, in lieu of granting leave, remanded the matter to the Court of Appeals for consideration as on leave granted. 454 Mich 851 (1997).

The Court of Appeals *held*:

1. The CSPA does not violate substantive due process. A statute that provides for involuntary civil commitment does not violate due process where the state must prove future dangerousness and some additional factor such as mental illness or mental abnormality. The CSPA required the state to prove by clear and convincing evidence that the person whose commitment was sought had a mental disorder that was coupled with criminal propensities to commit sex offenses. With respect to the defendant, it was proved that he suffered from an antisocial or sociopathic personality disorder such that he would be a menace to society if released from detention.

2. The CSPA does not violate equal protection. The CSPA provides for a release procedure that is similar to procedures that apply to the release of those acquitted on the basis of insanity and those released from other civil commitment. As with those other procedures, release under the CSPA cannot take place unless it is established that the person has recovered from mental illness or no longer poses a danger to himself or others.

3. The circuit court did not clearly err in finding that the defendant continues to suffer from his mental disorder such that he would pose a danger to others if he were released from detention.

Affirmed.

RAPE — CRIMINAL SEXUAL PSYCHOPATH ACT — CONSTITUTIONAL LAW — DUE PROCESS — EQUAL PROTECTION.

The criminal sexual psychopath act, which before its repeal provided for the indefinite and involuntary civil commitment of criminal sexual psychopaths and whose discharge provision continues to be enforced by the courts pursuant to administrative order of the Supreme Court, does not violate substantive due process in terms of who could be committed and does not violate equal protection in terms of the procedure by which a person committed can be released (1939 PA 165, as amended by 1952 PA 58, MCL 780.501 *et seq.*; MSA 28.969[1] *et seq.*, repealed by 1966 PA 267 and 1968 PA 143; Administrative Order No. 1969-4).

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Frederick Anderson,* Prosecuting Attorney, and *Yvonne Dzialowski,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Randy E. Davidson*), for the defendant on appeal.

Before: MARKEY, P.J., and KELLY and WHITBECK, JJ.

PER CURIAM. Defendant seeks his release from the Department of Mental Health, Center for Forensic Psychiatry, where he is confined pursuant to the criminal sexual psychopath act (CSPA), 1939 PA 165, as amended by 1952 PA 58, MCL 780.501 *et seq.*; MSA 28.967(1) *et seq.* (repealed by 1966 PA 267 and 1968 PA 143 ), as applied to him pursuant to Administrative Order No. 1969-4, 382 Mich xxix, which continued in effect the release provisions of the CSPA for those confined under that statute. Defendant's appeal is before this Court on remand from the Supreme Court for consideration as on leave granted,[1] following the circuit court's denial of his petition for discharge brought pursuant to § 7 of the CSPA.

In 1966, defendant raped and murdered a teenage girl in Newaygo County. The following year, defendant raped and murdered a seven-year-old girl in Allegan County. In October 1967, defendant pleaded guilty of the Allegan County murder. He was found guilty of first-degree murder and petitioned the trial court to declare him a criminal sexual psychopath pursuant to the CSPA. Defendant was found to be a criminal sexual psychopath and was committed indefinitely to the Ionia State Hospital. After defendant's discharge in 1973, the Allegan County prosecutor again initiated criminal charges for the Allegan County murder.

In 1977, defendant pleaded guilty of second-degree murder for the Allegan County murder and was sentenced to life imprisonment. In June 1978, this Court reversed defendant's conviction for the Allegan

---

[1] *People v Williams*, 454 Mich 851 (1997).

County murder,[2] citing § 8 of the CSPA.[3] The Supreme Court affirmed the reversal, but instead of releasing defendant, ordered defendant's return to the Department of Mental Health for confinement and examination to test his recovery under § 7 of the CSPA.[4] In November 1979, the Supreme Court remanded the matter to the Allegan Circuit Court to allow defendant to file a discharge petition and to permit that court to conduct a hearing to determine whether defendant had recovered from his criminal sexual psychopathy under § 7 of the CSPA.[5] Thereafter, defendant filed discharge petitions several times, and each time the judge or jury determined that the prosecution had proved by clear and convincing evidence that defendant had not recovered from criminal sexual psychopathy to a degree that he would no longer be a menace to others. The instant appeal stems from one such petition, which the circuit court denied in July 1994.

Defendant first argues that the CSPA violates his substantive due process rights because it permits his indefinite detention without requiring the state to prove that he suffers from a mental illness, as defined under state law, and is dangerous. Defendant does

---

[2] *People v Williams*, unpublished opinion per curiam of the Court of Appeals, issued June 21, 1978 (Docket No. 77-698).

[3] Section 8 of the CSPA provided:

No person who is found in such original hearing to be a criminal sexual psychopathic person and such finding having become final, may thereafter be tried or sentenced upon the offense with which he originally stood charged, or convicted, in the committing court at the time of the filing of the original petition. [MCL 780.508; MSA 28.967(8). ]

[4] *People v Williams*, 406 Mich 990 (1979).

[5] *People v Williams*, 407 Mich 912 (1979).

not challenge the constitutionality of the Allegan Circuit Court's original determination that he is a criminal sexual psychopath, nor does he address the legality of the decision to have him confined by the Department of Mental Health. Rather, defendant challenges the release provisions of the CSPA as unconstitutional under the Due Process Clause of the Fourteenth Amendment, which provides, "[N]or shall any state deprive any person of life, liberty, or property, without due process of law."[6] US Const, Am XIV, § 1. We review the constitutionality of the pertinent release provisions of the CSPA de novo, *People v White*, 212 Mich App 298, 304-305; 536 NW2d 876 (1995), and conclude that its release provisions do not unconstitutionally deprive defendant of due process.

The legislative intent underlying passage of the CSPA was "to provide civil commitment, segregation and treatment of sexual psychopathic persons rather than criminal punishment, the ineffectiveness of which, as a deterrent, had been demonstrated in the behavior of a number of recidivist sex offenders." *People v Smith*, 405 Mich 418, 429; 275 NW2d 466 (1979). Section 1 of the CSPA defined a "criminal sexual psychopathic person" as "[a]ny person who is suffering from a mental disorder and is not feeble-minded, which mental disorder is coupled with criminal propensities to the commission of sex offenses." MCL 780.501; MSA 28.967(1). Section 3 of the CSPA authorized the prose-

---

[6] In essence, defendant argues that the CSPA's release provisions arbitrarily interfere with his right to remain free of physical restraint, which "has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Foucha v Louisiana*, 504 US 71, 80; 112 S Ct 1780; 118 L Ed 2d 437 (1992).

cuting attorney of the county in which the criminal sexual psychopathic person was charged with a criminal offense, the Attorney General, or "some one on behalf of the person charged" to file a statement "setting forth facts tending to show that such person is a criminal sexual psychopathic person." MCL 780.503; MSA 28.967(3). After the trial court received this statement, § 4 of the CSPA required it to appoint two qualified psychiatrists in accordance with a specified procedure to examine the alleged criminal sexual psychopath and file written reports of their findings. MCL 780.504; MSA 28.967(4). If both examining psychiatrists determined that the person was a criminal sexual psychopathic person, as defined by the CSPA, the trial court was directed to hold a hearing to determine if the person was a criminal sexual psychopath. *Id.* Upon finding that the person was a criminal sexual psychopath as defined by the CSPA, § 5 of the CSPA directed the trial court to commit the person to the state hospital commission "until there are reasonable grounds to believe that such person has recovered from such psychopathy to a degree that he will not be a menace to others." MCL 780.505; MSA 28.967(5).

Section 7 of the CSPA, MCL 780.507; MSA 28.967(7), which governs the release of criminal sexual psychopaths from their indefinite civil commitment, states in pertinent part:

> Such criminal sexual psychopathic person shall be discharged only after there are reasonable grounds to believe that such person has recovered from such psychopathy to a degree that he will not be a menace to others. At any time, when he shall appear to have so recovered, a petition in writing setting forth the facts showing such recovery may be filed with the clerk of the court by which he was committed and such court shall proceed to determine whether

or not he has recovered from such psychopathy to a degree that he will not be a menace to others. Jury trial of such issue may be had, if demanded before the trial of said issue and within 15 days after the filing of such petition. If, following such hearing, such person is found to have recovered from such psychopathy to a degree that he will not be a menace to others, then the court shall order such person to be discharged from the custody of the state hospital commission. In the event such person is found to have not recovered from such psychopathy, then the court shall order such person to be returned to the custody of the state hospital commission to be held under the previous commitment of such person.

Although the Legislature repealed the CSPA, the release provisions remain in effect pursuant to Administrative Order No. 1969-4.

We find that the United States Supreme Court's decision in *Kansas v Hendricks*, ___ US ___; 117 S Ct 2072; 138 L Ed 2d 501 (1997), guides our due process analysis of the CSPA. In *Hendricks*, the Supreme Court rejected a substantive due process challenge to a similar Kansas statute, the Sexually Violent Predator Act,[7] that provided for indefinite civil commitment of certain repeat sex offenders the act termed "sexually violent predators," which the act defined to include " 'any person who has been convicted of or charged with a sexually violent offense and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in the predatory acts of sexual violence.' " 117 S Ct 2077 (quoting Kan Stat Ann 59-29a02[a]). The act defined the term "mental abnormality" as a " 'congenital or acquired condition affecting the emotional or volitional capac-

---

[7] Kan Stat Ann 59-29a01 *et seq.*

ity which predisposes the person to commit sexually violent offenses in a degree constituting such person a menace to the health and safety of others.' " *Id.* (quoting Kan Stat Ann 59-29a02[b]). The Kansas act's civil commitment procedure applied to, inter alia, "a presently confined person who . . . 'has been convicted of a sexually violent offense' and is scheduled for release." *Id.* (quoting Kan Stat Ann 59-29a03[a]).

The Court likened the Sexually Violent Predator Act to the more traditional involuntary civil commitment statutes that provide "for the forcible civil detainment of people who are unable to control their behavior and who thereby pose a danger to the public health and safety." 117 S Ct 2079. Involuntary civil commitment statutes of this kind have been upheld where they require the state to prove (1) future dangerousness and (2) "some additional factor, such as a 'mental illness' or 'mental abnormality.' " 117 S Ct 2080. Kansas' Sexually Violent Predator Act passed constitutional muster because it required the state to prove future dangerousness and to further establish the existence of a "mental abnormality" or "personality disorder" that interferes with volitional control and thus makes it difficult or impossible for the sexual predator to resist his criminal sexual impulses. *Id.* The Court further stated that the Kansas Legislature's decision to use the term "mental abnormality" instead of "mental illness" to define the mental condition necessary for commitment under the Sexually Violent Predator Act was constitutional:

> [W]e have never required State legislatures to adopt any particular nomenclature in drafting civil commitment statutes. Rather, we have traditionally left to legislators the task of defining terms of a medical nature that have legal

significance. As a consequence, the States have, over the years, developed numerous specialized terms to define mental health concepts. Often, those definitions do not fit precisely with the definitions employed by the medical community. The legal definitions of "insanity" and "competency," for example, vary substantially from their psychiatric counterparts. Legal definitions, however, which must "take into account such issues as individual responsibility . . . and competency," need not mirror those advanced by the medical profession. [117 S Ct 2081 (citations omitted).]

Turning now to the CSPA, we conclude that its civil commitment procedures satisfy due process requirements. Reading sections 1 through 5 of the CSPA, we determine that the act, like the statute examined in *Hendricks*, requires the state to prove that the subject of the contemplated commitment has a mental disorder, coupled with criminal propensities to commit future sex offenses or "future dangerousness." We recognize that the Kansas statute at issue in *Hendricks*, unlike the release provisions of the CSPA, required the state to prove beyond a reasonable doubt that a person was a "sexually violent predator" as a condition for commitment under that statute. 117 S Ct 2077. However, nothing in the *Hendricks* opinion indicates that such a high level of proof is constitutionally required for the civil commitment of a potentially dangerous, repeat sex offender. Accordingly, we hold that, as with other civil commitment proceedings, the standard of proof that the state must meet to justify continued commitment under the CSPA is proof by clear and convincing evidence as required by the Fourteenth Amendment. *MLB v SLJ*, 519 US ___; 117 S Ct 555, 565, n 10; 136 L Ed 2d 473 (1996); *Addington v Texas*, 441 US 418, 431-433; 99 S Ct 1804; 60 L

Ed 2d 323 (1979).[8] In the case at hand, the prosecution presented evidence through its expert witnesses to show, clearly and convincingly, that defendant continued to suffer from the antisocial, or sociopathic, personality disorder that caused his past crimes, and that he had not recovered to an extent that he would not be a menace to society if released from detention. In light of *Hendricks*, we find that both the CSPA and the civil commitment procedure that was used in this case satisfy constitutional due process requirements.

Additionally, defendant argues that the CSPA is unconstitutional, as applied to him, because there are no objective criteria by which to determine whether he has recovered from the personality disorder that caused his criminal acts. Defendant asserts that the lack of objective criteria by which to gauge his recovery allows his continued detention on a mere "generalized fear of future behavior." We reject this argument, primarily because the state proved, as required by the CSPA, that defendant would pose an actual threat of danger to others if he were released from his detention, because he has a mental disorder that predisposes him to commit future sex offenses. This is constitutionally sufficient under *Hendricks*. Here, defend-

---

[8] Defendant briefly argues that the CSPA is unconstitutional because it does not require the state to establish by clear and convincing evidence the requirements necessary for civil commitment. We acknowledge that the CSPA does not explicitly require the state to make its case for continued detention pursuant to the CSPA with clear and convincing evidence. However, we presume that the Legislature intended a constitutional interpretation of the CSPA, see *Lowe v Dep't of Corrections (On Rehearing)*, 206 Mich App 128, 137; 521 NW2d 336 (1994), and thus we will interpret the CSPA as properly requiring the state to show by clear and convincing evidence that continued civil commitment is necessary. Indeed, the Allegan Circuit Court has consistently applied this evidentiary standard to defendant's many petitions for release under the CSPA.

ant has a mental disorder that is apparently the subject of psychiatric debate and for which there may be no cure. Any forensic limitation is unfortunate, but psychiatric researchers' inability to delineate specifically the contours of defendant's disorder and set forth objective criteria by which his recovery may be gauged is not a sufficient basis for declaring the CSPA unconstitutional as applied to defendant.

Next, defendant argues that the CSPA violates the Equal Protection Clause of the Fourteenth Amendment, US Const, Am XIV, § 1, because it provides a different procedure for release from detention for criminal sexual psychopathic persons than that set forth elsewhere for those acquitted on the bases of insanity and others who have been civilly committed. We disagree.

The Equal Protection Clause "directs that 'all persons similarly circumstanced shall be treated alike.' " *El Souri v Dep't of Social Services*, 429 Mich 203, 207; 414 NW2d 679 (1987). Assuming *arguendo* that those acquitted on the basis of insanity, as well as other civilly committed persons, and criminal sexual psychopathic persons are "similarly circumstanced," the release procedures of the CSPA largely mirror the release procedures that the Legislature has extended to other civilly committed persons. Civilly committed persons and those acquitted on the basis of insanity may be discharged whenever the court determines that the committed person qualifies as "no longer . . . requiring treatment." MCL 330.1476(2); MSA 14.800(476)(2), MCL 330.1484-330.1485a; MSA 14.800(484)-14.800(485a). A "person requiring treat-

ment" is, in essence, a person with a mental illness[9]
who, as a result of this illness, poses a serious danger
to himself or others. MCL 330.1401; MSA 14.800(401).
Thus, the civilly committed person must be released
when he either has recovered from his mental illness
or no longer poses a danger to himself or others.
Likewise, as we have discussed, the CSPA requires the
prosecutor to prove both mental disorder and future
dangerousness to others in order to justify continued
detention of the criminal sexual psychopath. We con-
clude that defendant has not received different treat-
ment under the CSPA than he would receive had he
been civilly committed under the provisions of the
Mental Health Code. Accordingly, we reject defend-
ant's equal protection argument.

Finally, defendant argues that the trial court erred
in finding that he was both currently suffering from a
mental disorder and would pose a danger to others if
he were released from detention. We disagree.

We review the trial court's findings of fact for clear
error. *Sackett v Atyeo*, 217 Mich App 676, 680; 552
NW2d 536 (1996). Clear and convincing evidence is
that which

"produce[s] in the mind of the trier of fact a firm belief or
conviction as to the truth of the allegations sought to be
established, evidence so clear, direct and weighty and con-
vincing as to enable [the factfinder] to come to a clear con-
viction, without hesitancy, of the truth of the precise facts
in issue." [*In re Martin*, 450 Mich 204, 227; 538 NW2d 399

---

[9] MCL 330.1400(g); MSA 14.800(400)(g) defines "mental illness" as "a
substantial disorder of thought or mood that significantly impairs judg-
ment, behavior, capacity to recognize reality, or ability to cope with the
ordinary demands of life."

(1995) (quoting *In re Jobes*, 108 NJ 394, 407-408; 529 A2d 434 [1987]).]

Upon review of the evidence presented at the hearing on defendant's petition for release, we conclude that the trial court did not clearly err in determining that defendant continued to suffer from the personality disorder that caused him to commit the sexual assaults and killings, and that he further posed a danger to others because of his personality disorder. Four experts who observed defendant and were familiar with his treatment opined that he continued to suffer from the antisocial personality disorder that caused him to commit the prior attacks, and that he should not be released because he remained dangerous. Even the expert witnesses called by the defense could not posit that defendant would not commit further sex crimes if he were released. On this evidence, we uphold the circuit court's factual findings supporting defendant's further detention.

Defendant again stresses as crucially important the fact that the prosecution's expert witnesses agreed that there were no objective criteria by which to measure defendant's recovery from his antisocial personality disorder. Defendant submits no authority to support the proposition that a person may not be confined because of a mental disorder absent "objective" criteria for identifying recovery from that disorder; a party may not announce a position and leave it to us to discover and rationalize the basis for the claim. *Joerger v Gordon Food Service, Inc*, 224 Mich App 167, 178; 568 NW2d 365 (1997). Indeed, the search for objective criteria in the field of forensic psychiatry is a perilous one. In *Hendricks, supra,* the United States Supreme Court recognized that shifting, controversial

impressions regarding what constitutes mental ill-ness—by whatever name—are nonetheless legally cognizable for purposes of involuntarily committing those who pose a danger to society because they suffer from mental disorders. See 117 S Ct 2081 & n 3. Thus, we leave it to the circuit court, acting in its fact-finding function with the benefit of expert psychiatric testimony, to determine whether, if ever, defendant will have recovered from his personality disorder such that he will no longer pose a threat to the safety of others.

Affirmed.