RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0344P (6th Cir.)
File Name: 03a0344p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

THEODORE G. WILLIAMS,
    *Petitioner-Appellant,*

    *v.*        No. 01-1951

WILLIAM MEYER,
    *Respondent-Appellee.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 93-75495—Paul D. Borman, District Judge.

Argued: May 8, 2003

Decided and Filed: September 25, 2003

Before: BOGGS and DAUGHTREY, Circuit Judges;
OBERDORFER, District Judge.[*]

_____

### COUNSEL

**ARGUED:** John A. Shea, Ann Arbor, Michigan, for
Appellant. Brad H. Beaver, OFFICE OF THE ATTORNEY

_____

[*] The Honorable Louis F. Oberdorfer, United States District Judge for
the District of Columbia, sitting by designation.

---

GENERAL, CORRECTIONS DIVISION, Lansing,
Michigan, for Appellee. **ON BRIEF:** John A. Shea, Ann
Arbor, Michigan, for Appellant. Brad H. Beaver, OFFICE
OF THE ATTORNEY GENERAL, CORRECTIONS
DIVISION, Lansing, Michigan, for Appellee.

OBERDORFER, D. J., delivered the opinion of the court,
in which DAUGHTREY, J., joined. BOGGS, J. (p. 18),
delivered a separate dissenting opinion.

_____

### OPINION

_____

OBERDORFER, District Judge. Theodore G. Williams,
the petitioner, appeals the district court's order denying his
motion for relief from judgment. The district court entered
judgment, denying Williams' petition for habeas relief, after
Williams failed to timely file objections to the magistrate's
report and recommendation. Williams has demonstrated that
his failure to timely file his objections was the result of
"excusable neglect," entitling him to relief. Accordingly, we
reverse and remand.

### I. BACKGROUND

#### A. Relevant Statutory Provisions

#### 1. Michigan's Criminal Sexual Psychopath Act

Until its repeal, effective August 1, 1968, Michigan's
Criminal Sexual Psychopath Act (the "Sexual Psychopath
Act"), Mich. Comp. Laws Ann. §§ 780.501-.509 (West
1968), *repealed by* 1968 Mich. Pub. Acts 143 (Aug. 1, 1968),
provided that a criminal defendant in Michigan who was
designated a "criminal sexual psychopathic person" would be
committed to the custody of the state hospital commission to
be confined in an appropriate state institution. *Id*. § 780.505.
A criminal sexual psychopathic person was defined as "[a]ny

person who is suffering from a mental disorder and is not feeble-minded, which mental disorder is coupled with criminal propensities to the commission of sexual offenses."[1] *Id.* § 780.501. After the Sexual Psychopath Act was repealed, the Michigan Supreme Court ordered that the discharge of persons in custody pursuant to the Act would continue to be governed by the Act's discharge provisions until further legislative clarification. Admin. Order 1969-4, 382 Mich. xxix (1969). As no such clarification ever occurred, the Act's discharge provisions have continued to apply to such persons. Under those provisions (section 7 of the Act as enacted), a person in custody "shall be discharged only after there are reasonable grounds to believe that such person has recovered from such psychopathy to a degree that he will not be a menace to others." Mich. Comp. Laws. Ann. § 780.507 (West 1968).

## 2. Michigan's Mental Health Code

With the exception of persons committed pursuant to the Sexual Psychopath Act, Michigan's Mental Health Code governs the commitment and discharge of persons in the custody of the Michigan Department of Mental Health. Mich. Comp. Laws Ann. § 330.2050(5) (West 2003). Under the Mental Health Code, a person must be discharged when "the patient's mental condition is such that he or she no longer meets the criteria of a person requiring treatment." *Id.* § 330.1476(2). A "person requiring treatment" is defined as an individual "who has mental illness" and (1) who as a result of that illness can reasonably be expected within the near future to intentionally or unintentionally seriously injure himself or herself or another individual; (2) who as a result of that illness is unable to attend to his or her basic physical needs necessary to avoid serious harm in the near future; *or* (3) whose judgment is so impaired that he or she is unable to

---

[1]Under the Sexual Psychopath Act, either the state or the defendant could seek this designation.

understand the need for treatment and whose continued behavior can reasonably be expected, on the basis of competent clinical opinion, to result in significant physical harm to himself or herself or others. *Id.* § 330.1401. Mental illness is defined as "a substantial disorder or thought or mood that significantly impairs judgment, behavior, capacity to recognize reality, or ability to cope with the ordinary demands of life." *Id.* § 330.1400(g).

## B. Facts

In October 1967, Theodore Williams, the petitioner, entered a plea of guilty in Michigan state court to a charge of first degree murder. Prior to sentencing, Williams was designated a "criminal sexual psychopath," under the then-applicable Sexual Psychopath Act, and committed to the custody of a state mental hospital. He was initially discharged in September 1973, but he was returned to custody in 1979, following a determination by the Michigan Supreme Court that he had been improperly released.[2] *See People v.*

---

[2]A convoluted series of events transpired between Williams' release in 1973 and his return to custody in 1979. When Williams pleaded guilty in 1967, he had been charged with the rape and murder of a seven-year-old girl in Allegan County, Michigan. After his release, Allegan County, for reasons not apparent from the record, filed new charges based on that same rape and murder. Williams again pleaded guilty, this time to second degree murder, and he was sentenced to life in prison. Williams appealed, citing section 8 of the Sexual Psychopath Act. Section 8 provided that a defendant was immune from prosecution for the "the offense with which he originally stood charged, or convicted" prior to commitment. Mich. Comp. Laws Ann. § 780.508 (West 1968). The Michigan Court of Appeals held that section 8 applied and reversed Williams' conviction. The Michigan Supreme Court affirmed, but ordered Williams returned to the custody of the Department of Mental Health on the ground that he had been "improperly released" in 1973. *People v. Williams*, 406 Mich. 990 (1979). The case was remanded to the state circuit court to permit Williams to file a new petition for discharge. *People v. Williams*, 407 Mich. 912 (1979).

Shortly after his release in 1973, Williams was also arrested and

*Williams*, 406 Mich. 909 (1979). From then until the present, he has remained in the custody of the Michigan Department of Mental Health. He has filed a number of petitions for discharge pursuant to section 7 of the repealed Sexual Psychopath Act, all of which have been denied. Today, he is the only person remaining in the custody of the Michigan Department of Mental Health who was committed under, and whose discharge is governed by, the Sexual Psychopath Act.

## C.   Procedural History

### 1.   State Proceedings

The present action began with the petition for discharge Williams filed on September 19, 1991. In addition to seeking discharge under section 7 of the Sexual Psychopath Act, Williams contended that the application of section 7 violated his constitutional rights to due process and equal protection. On July 29, 1993, the state circuit court rejected Williams' constitutional challenges. JA 77-100 (*People v. Williams*, No. 67-4411 FY (Allegan County, Mich. Cir. Ct. July 29, 1993)). On June 13, 1994, at the conclusion of a series of evidentiary hearings, it orally denied Williams' petition. A subsequent written order stated that "it was established by clear and convincing evidence that the defendant has not recovered from his criminal sexual psychopathy to a degree that he will not be a menace to others." JA 103.

The Michigan Court of Appeals affirmed. It ruled that the constitutional challenges were without merit and that the circuit court had not clearly erred in denying discharge. *See*

charged with the rape and murder of a thirteen-year-old girl in Newaygo County, Michigan, a crime he had committed in 1966 and confessed to when he was arrested in 1967. Williams was unsuccessful in his attempt to get those charges dismissed under section 8, as they were not the basis for his conviction. Nonetheless, for reasons not apparent from the record, those charges were dismissed after Williams entered his second plea of guilty in Allegan County.

JA 105-111 (*People v. Williams*, 580 N.W.2d 438, 441-44 (Mich. Ct. App. 1998)). On November 24, 1998, the Michigan Supreme Court denied Williams' application for leave to appeal. *See People v. Williams*, 589 N.W.2d 287 (Mich. 1998).

### 2.   Federal Collateral Proceedings

After the state circuit court rejected his constitutional claims in 1993, Williams filed a petition in federal district court seeking habeas relief under 28 U.S.C. § 2254. On January 5, 1995, the district court dismissed the petition, pending final resolution of the state court proceedings. The case was reopened on January 14, 1999, after the Michigan Supreme Court denied Williams' application for leave to appeal. The district court appointed counsel to review, and amend as necessary, Williams' petition. Williams filed an amended petition on October 13, 2000, claiming that requiring him to seek discharge under section 7 deprived him of his constitutional rights to due process and equal protection. His due process claim had two components. First, he claimed that section 7 failed to satisfy the requirements of constitutional due process because it only required the state to prove a predisposition toward, not a "likelihood" of, future dangerousness, in conflict with the due process principles established by the Supreme Court in *Kansas v. Hendricks*, 521 U.S. 346 (1997), a decision upholding the standard for commitment in Kansas' Sexually Violent Predator Act. Next, he claimed that even if section 7 did not on its face violate due process, his continued detention did because even under section 7 there was insufficient evidence to support the state circuit court's conclusion that he was not entitled to release. His equal protection claim rested on a comparison between the standard for discharge under section 7 and the standard for discharge under the Mental Health Code. The latter, he claimed, was easier to satisfy, resulting in his being treated differently than other similarly situated persons held under the Mental Health Code. The

district court referred the case to a magistrate judge on January 16, 2001.

On March 7, 2001, the magistrate judge issued his report and recommendation, concluding that the habeas petition should be denied. JA 145-173. Williams had ten days to file objections to that report. *See* 28 U.S.C. § 636(b)(1). On March 16, 2001, Williams filed a consent motion for an enlargement of time, asking the district court for an additional thirty days to file objections because "the issues are novel and complex, the record voluminous, and other matters already scheduled [for counsel] when the Report and Recommendation was received will occupy a significant amount of [counsel's] time in the next couple of weeks." JA 189-90. The district court granted the motion, giving Williams until April 25, 2001, to file objections. JA 191.

On April 24, 2001, Williams filed a second motion for enlargement of time, asking for an additional twenty-one days, until May 17, 2001, to file objections. JA 192-93. The motion stated that counsel needed the extra time "[o]n account of recent illnesses and his trial schedule" and to review the implications of the Supreme Court's April 2, 2001 grant of *certiorari* in *Kansas v. Crane*, 532 U.S. 937 (2001), a case counsel thought had the potential to alter the guiding constitutional principles of involuntary hospitalization.[3] JA 193. Williams' counsel was unable to speak with Williams prior to making this request, but he informed the district court that he was "confident" Williams would not object. JA 193. On April 27, 2001, the district court denied the motion, stating: "Petitioner's counsel has already had one extension of time, and the Supreme Court's grant of *certiorari* in

---

[3]The issue presented in *Crane* was what, if any, showing of volitional impairment a state must make before civilly committing a sexual offender. Ultimately, the Court held that a state does not need to prove the offender's total or complete lack of control over his dangerous behavior, but does need to make some determination of a lack of control. 534 U.S. 407 (2002).

*Kansas v. Crane . . .* is unlikely to affect the merits of this case." JA 194. That same day, the district court accepted the magistrate's report and recommendation and denied Williams' petition for habeas relief. JA 195-96.

On May 11, 2001, pursuant to Federal Rule of Civil Procedure 60(b), Williams filed a motion for relief from judgment, for reconsideration of the order denying his second motion for an enlargement of time, and for leave to file objections, which he attached. JA 197-211. As grounds for relief, Williams argued that his failure to timely file objections was "excusable neglect" under Rule 60(b). Williams' motion described in greater detail the reasons why counsel had failed to file objections within the time allotted:

> undersigned counsel informs the Court that he fell ill on two separate occasions in the time between his first and second motions for enlargement. As a result, he lost several days of work. Moreover, also during this time a close friend came into the final stage of a terminal illness, which required the undersigned's attention in both a personal and representative capacity, resulting in a additional time being diverted from the office. Those unexpected events, combined with an already heavy hearings schedule (including a trial) during this time, and combined further with the unexpected *Crane* development, made it impossible for the undersigned to file [William's] objections within the enlargement of time initially given.

JA 198. With respect to the potential relevance of *Crane*, Williams argued that if the Supreme Court were to decide in *Crane* that the Constitution requires a showing of volitional impairment to prove future dangerousness, that would support Williams' claim that the quantum of proof of dangerousness required under the Sexual Psychopath Act did not satisfy constitutional due process. JA 199. Finally, Williams pointed out that if the district court denied the motion for

relief from judgment, he would be barred from any appeal on the merits. JA 204.

On June 6, 2001, the district court denied Williams' motion for relief from judgment, for reconsideration of the order denying the second motion for enlargement of time, and for leave to file his objections *instanter*. JA 174-75. The court ruled that Williams' counsel's "recent illnesses, his trial schedule and the potential need to review a case before the Supreme Court" did not amount to "excusable neglect to justify granting relief under Rule 60(b)." JA 175.

Williams filed a timely Notice of Appeal on July 3, 2001. On January 11, 2002, the Sixth Circuit issued a Certificate of Appealability, limited to "the sole issue of whether the district court properly denied Williams' motion for relief from judgment and for leave to file objections to the magistrate's report and recommendation."

## II.  DISCUSSION

### A.  Legal Principles

In relevant part, Federal Rule of Civil Procedure 60(b)(1) provides that "on motion and upon such terms as are just, the court may relieve a party . . . from a final judgment . . . for . . . mistake, inadvertence, surprise or excusable neglect." Fed. R. Civ. P. 60(b)(1). Where a party seeks relief from a default judgment,[4] Rule 60(b)(1) should be applied "equitably and liberally . . . to achieve substantial justice." *United Coin Meter v. Seaboard Coastline R.R.*, 705 F.2d 839, 844-45 (6th Cir. 1983) (internal quotations omitted). In deciding whether relief is warranted, three factors are relevant: (1) whether the party seeking relief is culpable; (2) whether the party opposing relief will be prejudiced; and (3) whether the party

---

[4]Although these principles come from cases involving default judgments, the parties assume, and we agree, that the same approach should govern the present case.

seeking relief has a meritorious claim or defense. *Id.* at 845. Culpability is "framed" by the specific language of the rule; *i.e.*, a party demonstrates a lack of culpability by demonstrating "mistake, inadvertence, surprise, or excusable neglect." *Waifersong, Ltd. v. Classic Music Vending*, 976 F.2d 290, 292 (6th Cir. 1992). And because Rule 60(b)(1) "mandates" such a demonstration, "[i]t is only when the [party seeking relief] can carry this burden that he will be permitted to demonstrate that he also can satisfy the other two factors: the existence of a meritorious defense and the absence of substantial prejudice to the [other party]." *Id.*; *see also Weiss v. St. Paul Fire & Marine Ins. Co.*, 283 F.3d 790, 794 (6th Cir. 2002) (a party seeking relief "must demonstrate first and foremost that the default did not result from his culpable conduct"). A district court's denial of a Rule 60(b)(1) motion is reviewed for abuse of discretion. *United Coin*, 705 F.2d at 843.

### B.  Application

#### 1.  Culpability of Party Seeking Relief

We start, as we must, by considering Williams' culpability. Williams contends that the failure to timely file objections was not the result of culpable conduct but of "excusable neglect." A party's conduct is culpable if it "display[s] either an intent to thwart judicial proceedings or a reckless disregard for the effect of its conduct on those proceedings." *Amerinational Indus. v. Action-Tungsram, Inc.*, 925 F.2d 970, 978 (6th Cir. 1991) (quoting *INVST Financial Group, Inc. v. Chem-Nuclear Systems, Inc.*, 815 F.2d 391 (6th Cir. 1992). Moreover, although clients are held liable for the acts and omissions of their counsel, *see, e.g.*, *United States v. Reyes*, 307 F.3d 451 (6th Cir. 2002), "this court, like many others, has been extremely reluctant to uphold the dismissal of a case or the entering of a default judgment merely to discipline an errant attorney because such a sanction deprives the client of his day in court," *see Buck v. United States Dep't of Agriculture*, 960 F.2d 603, 608 (6th Cir. 1992).

The record establishes that in failing to timely file neither Williams nor his counsel engaged in any culpable conduct. First, Williams' failure to timely file objections does not appear to have been "willful" or the result of "carelessness" or "negligence." *See Weiss*, 283 F.3d at 795. He timely asked for enlargements of time, and the time requested was not extraordinary. His first motion for an enlargement of time, which was granted, was timely filed and sought merely an additional thirty days. The second motion was also timely filed and asked for only an additional twenty-one days. Moreover, the length of time that lapsed between the appointment of Williams' counsel and the filing of the amended petition, while not irrelevant, does not obviate the need for sufficient time after receiving the magistrate's report and recommendation to review the actual report and prepare responsive objections.

Nor did Williams fail to give reasons for needing additional time. *See*, *e.g.*, *Wilson v. Cassidy* (*In re Cassidy*), 273 B.R. 531 (Bankr. N.D. Ohio 2002). In both the second motion for an enlargement of time and the motion for relief from judgment, Williams cited a number of reasons for needing additional time, including illness, preexisting professional obligations, the Supreme Court's grant of *certiorari* in *Kansas v. Crane*, the complexity of the issues, the magnitude of the record, and the magistrate's reliance on caselaw from other jurisdictions. All of these events were mostly or entirely beyond counsel's control, and there is no evidence that the any of the claimed reasons were false or frivolous. The respondent asks us to penalize Williams for failing to provide the district court with the specific details of his counsel's illness or trial schedule, but we do not believe that fact supports a finding of culpability where, as here, he was never asked for such information and the veracity of the information has not been challenged. The respondent also contends, as the district court ruled, that *Crane* had no relevance to Williams' case. We disagree. The grant of *certiorari* in *Crane*, presenting (and ultimately resolving) the issue of what the federal Constitution requires a state to

demonstrate with respect to a sexual offender's lack of control, clearly had the potential to be relevant to Williams' claims.

Finally, Williams did not delay seeking relief or filing his objections. He filed his motion for relief, with objections attached, almost immediately after the district court denied the second motion for enlargement of time and entered judgment. And the objections Williams seeks to file are not mere repetitions of his original petition. Given these circumstances, Williams' failure to timely file objections was the result of "excusable neglect," not culpable conduct.

### 2.   Prejudice to Prevailing Party

The respondent concedes that granting the requested relief will cause it no prejudice.

### 3.   Meritoriousness of Claim or Defense

The final factor to consider is the meritoriousness of the claim of the party seeking relief – in this case, the meritoriousness of Williams' objections to the magistrate's report and recommendation. A claim or defense is "meritorious," if "there is *some possibility* that the outcome of the suit after a full trial will be contrary to the result achieved by the default." *INVST Financial v. Chem-Nuclear Systems*, 815 F.2d 391, 398-99 (6th Cir. 1987) (internal quotations omitted) (emphasis added); *see also Amerinational Indus. v. Action-Tungsram, Inc.*, 925 F.2d 970, 977 (6th Cir. 1991). The test of meritoriousness is not "likelihood of success," but merely whether the claim or defense is "good at law." *United Coin*, 705 F.2d at 845. Ambiguous or disputed facts must be construed "in the light most favorable to the [defaulted party]." *Amerinational*, 925 F.2d at 977. Accordingly, we must decide whether permitting the filing of Williams' objections, which opens up the possibility of an appeal on the merits, creates "some possibility" of a different

outcome. Applying this standard, as explained below, we believe that several of his objections are meritorious.

### a. Meritorious Objection to Analysis of First Due Process Claim

Williams' first due process claim is that section 7 is unconstitutional because it does not require sufficient proof of future dangerousness. Specifically, he claims that under section 7, as interpreted and applied by Michigan courts, the State can prevent discharge by proving merely a *predisposition* toward future dangerousness, whereas the Supreme Court's decision in *Kansas v. Hendricks*, upholding Kansas' Sexually Violent Predator Act, established that continued confinement requires proof of a *likelihood* of future dangerousness.

In *Hendricks*, in the course of resolving the specific issues before it, the Supreme Court observed that civil commitment statutes generally satisfy due process when "they have coupled proof of dangerousness with the proof of some additional factor, such as a mental illness or mental abnormality." It then concluded that Kansas' Sexually Violent Predator Act satisfied this standard because it required "evidence of past sexually violent behavior and a present mental condition that creates a *likelihood of such conduct in the future* if the person is not incapacitated."[5] 521 U.S. at 357-58 (emphasis added).

---

[5] Kansas' Sexually Violent Predator Act is an act similar, but not identical, to Michgan's Sexual Psychopath Act. The Kansas Act provides for the civil commitment of a "sexually violent predator," defined as a person (1) convicted of, or charged with, a sexually violent offense, (2) who suffers from a mental abnormality or personality disorder, and (3) which makes the person likely to engage in predatory acts of sexual violence. A person held under this statute must be discharged if, at any time, the state can no longer satisfy its burden of proving these facts beyond a reasonable doubt.

The magistrate judge agreed that *Hendricks* established that due process requires proof of a likelihood of future dangerousness, but rejected Williams' claim that section 7 does not require such proof. He acknowledged that the language of section 7 differs from the language of Kansas's Sexually Violent Predator Act, but found those differences immaterial as the Michigan courts, in his view, had applied section 7 in a manner that "mirrors the Kansas statute." JA 162. He justified his conclusion by pointing out that the Michigan Court of Appeals stated in its opinion that Williams' claim failed "because the state proved, as required by the [Sexual Psychopath Act], that [Williams] would pose an actual threat of danger to others if he were release[d] from his detention." JA 162-63 (quoting *Williams*, 228 Mich. App. at 555 (JA 109)). Relying on this language, he concluded that the "menace to others" language of section 7 serves the same purpose as the "likelihood of such conduct" language in the Kansas statute, namely, to insure that continued commitment is based on a finding of a likelihood of future dangerousness.

Williams objects to the magistrate's reliance on the Michigan Court of Appeals' opinion as the basis for his conclusion that section 7 requires finding a likelihood of future dangerousness. JA 207. He contends that the opinion does not clearly impose such a requirement, as it also describes the required finding in terms of a predisposition or propensity toward future dangerousness. *Id.* (citing *Williams*, 228 Mich. App. at 554-555 (JA 109)).

We agree. In its opinion, the Michigan Court of Appeals states that Williams poses an "actual threat of danger," but it also describes section 7 as requiring the state to prove "criminal *propensities* to commit future sex offenses," or a "mental disorder that *predisposes* him to commit future sex offenses." JA 109 (*Williams*, 228 Mich. App. at 554-555). This conflicting language calls into question the magistrate's conclusion that it has been clearly established by the Michigan courts that section 7 requires proof of a likelihood

of future dangerousness and persuades us that Williams' objection is meritorious.

### b. Meritorious Objections to Equal Protection Analysis

Williams' equal protection claim is that section 7 is unconstitutional because it subjects him to a different, and more difficult to satisfy, standard for release than that applied to other involuntary detainees, including sexual offenders committed after being found guilty but mentally ill or not guilty by reason of insanity, who are covered by the Mental Health Code.

The magistrate rejected Williams' equal protection claim on several grounds. First, again relying on the Michigan Court of Appeals' opinion, he concluded that standards for discharge in the Mental Health Code and in section 7 "largely mirror" each other and, therefore, that Williams could not show any constitutionally significant difference between his treatment and the treatment of other involuntary detainees under the Mental Health Code. JA 166. Moreover, he ruled, even if the standards are different, the equal protection claim fails because "[i]mprovement in the criminal justice, sentencing, and mental health schemes of a state are substantial governmental interests, and a state does not violate equal protection by applying different schemes to persons who committed their crimes at different times." JA 169.

Williams first objects to the magistrate's conclusion that section 7 imposes the same burden as the Mental Health Code. He argues that the definition of future dangerousness in the Mental Health Code is "specific and narrow," while the definition in section 7 is "broad and general," making it easier to obtain release under the Mental Health Code. JA 210. As the magistrate recognized, the Michigan Court of Appeals' finding that the Mental Health Code and section 7 "largely mirror" each other is a construction of state law that is binding on a federal court. However, that finding does not

preclude the possibility that a federal court might nonetheless conclude that there are differences between the two schemes and that those differences are constitutionally significant. The magistrate's analysis does not address this possibility. Moreover, Williams' claim that the burdens are not identical, and that it is more difficult to obtain release under section 7, is supported by the testimony of at least one expert. *See* JA 41 (describing testimony of Dr. Mark Fettman). Accordingly, we are persuaded that this objection is meritorious.

Williams also objects to the magistrate's conclusion that any difference between his treatment under section 7 and the treatment of other sexual offenders under the Mental Health Code is constitutionally insignificant because it results from the state's "substantial" interest in improving its criminal justice, sentencing and mental health schemes. He contends that the magistrate erred because he failed to apply strict scrutiny, which requires that the government's interests be compelling. We agree. Any difference in treatment of involuntary detainees is subject to strict scrutiny. *See Foucha v. Louisiana*, 504 U.S. 71, 85-86 (1992). As the magistrate's analysis fails to apply this standard, Williams' second objection to the magistrate's equal protection analysis is also meritorious.

### III.  CONCLUSION

As all three *Coin* factors weigh in Williams' favor, the district court should have granted Williams' motion for relief from judgment and permitted him to file his objections. Accordingly, and for the above stated reasons, the district court's order denying Williams' motion for relief from judgment, for reconsideration of the order denying a second enlargement of time to file objections and for leave to file objections is **REVERSED**.  The district court's April 27, 2001 order denying the second motion for enlargement of time is **REVERSED**; its April 27, 2001 order accepting the magistrate judge's report and recommendation and denying Williams' application for the writ of habeas corpus is

**VACATED**; and its April 27, 2001 judgment in favor of the respondent and against the petitioner is **VACATED**. The case is **REMANDED** with instructions for the district court to accept Williams' objections for filing, and to issue a decision on Williams' petition after consideration of all of his objections.[6]

---

[6]A determination on remand that Williams has been deprived of his constitutional right to due process or equal protection does not entitle him to release, but to have a state court reconsider his petition for discharge guided by the federal court's final ruling on the merits.

---

**DISSENT**

---

BOGGS, Circuit Judge, dissenting. I respectfully dissent from my colleagues' holding that counsel committed "excusable neglect" in failing to file objections to the magistrate judge's report in this case. Counsel had asked for an extension of time for thirty days beyond the ten-day period prescribed for such objections. The court actually granted an additional thirty-nine days, to April 25.

Counsel, now having had forty-nine days since the filing of the magistrate judge's report, waited until the forty-eighth day to ask for an additional twenty-one day extension.

Under these circumstances, waiting until the next to the last day to file the extension was virtually defying the judge's right to rule on the motion. The circumstances at issue here, while certainly trying, are in no way out of the ordinary for legal practice. Other professional and personal commitments, which did not arise at the last moment, are part and parcel of doing business as a lawyer. The reasons relied on by my colleagues for finding this neglect excusable would be present in very many cases before our court. By waiting until the end of the extended period to file a request for yet another extension, counsel insured that the judge would have no choice between dismissing the case, with the harsh consequences that are noted in the opinion, and acceding to counsel's request, whatever its merits. Under these circumstances, I would hold that the test of *United Coin Meter* and of *Weiss* has been met and that counsel's actions show carelessness and/or negligence in dealing with the time given him by the court's initial extension of time.

I therefore respectfully dissent.