*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DANIEL WHEELER,

Defendant-Appellant.

UNPUBLISHED
December 26, 2024
2:32 PM

No. 366696 & 370002
Shiawassee Circuit Court
LC No. 1970-003957-FC

Before: MALDONADO, P.J., and M. J. KELLY and GARRETT, JJ.

M. J. KELLY, J. (*concurring in part and dissenting in part*).

I concur with the majority's determination that defendant Daniel Wheeler's challenge to the denial of bail pending resentencing is moot. However, because I believe that the trial court's factual findings following a *Miller* hearing[1] were not clearly erroneous, I would affirm the court's decision to resentence Wheeler to life imprisonment without the possibility of parole. I further believe that the majority properly recited the applicable standard of review, but rather than adhere to those standards the majority made its own factual findings. Accordingly, I respectfully dissent.

## I. STANDARD OF REVIEW

Resolution of this case turns upon the standard of review, and so it bears repeating. This Court reviews for an abuse of discretion the trial court's decision to sentence a juvenile to serve life without parole. *People v Taylor*, 510 Mich 112, 128; 987 NW2d 132 (2022). "[A] given sentence can be said to constitute an abuse of discretion if that sentence violates the principle of proportionality, which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *People v Skinner*, 502 Mich 89, 131-132; 917 NW2d 292 (2018) (quotation marks and citation omitted; alteration in original). An abuse of discretion occurs when the trial court's outcome falls outside the range of principled outcomes. *Id*. at 133. Moreover, our Supreme Court has made clear that "*Miller* called for individualized sentences, and the trial court is in a better position than an appellate court to

---

[1] *Miller v Alabama*, 567 US 460; 132 S Ct 2455; 183 L Ed 2d 407 (2012).

carry this task out because the trial court will almost always be more familiar with each individual defendant than is an appellate court." *Skinner*, 502 Mich at 136. The *Skinner* Court further explained that:

> *Miller* requires the trial court to consider such factors as the defendant's maturity, impetuosity, ability to appreciate risks and consequences, ability to deal with police officers or prosecutors, capacity to assist his own attorneys, and possibility of rehabilitation. The trial court is obviously in a far better position than the appellate court to assess such factors, and thus the latter must review the trial court's consideration of these factors and its ultimate decision whether to impose a life-without-parole or a term-of-years sentence under a deferential abuse-of-discretion standard of review. [*Id*. at 136 n 26.]

Finally, our review of the trial court's underlying factual findings at a *Miller* hearing is for clear error. *Taylor*, 510 Mich at 128. "A finding is clearly erroneous if, after reviewing the entire record, this Court is definitely and firmly convinced that the trial court made a mistake." *People v Swenor*, 336 Mich App 550, 562; 971 NW2d 33 (2021).

## II. LEGAL FRAMEWORK

Under *Miller*, a mandatory sentence of life without parole for juvenile offenders, who were under 18 years of age when the offense was committed, is an unconstitutionally cruel and unusual punishment. *Taylor*, 510 Mich at 126. Although *Miller* only requires that a sentence of life without parole be discretionary rather than mandatory, states are not prohibited from imposing greater sentencing limits. *Id*. at 128-129. "The Michigan Legislature has imposed greater sentencing limits via MCL 769.25." *Taylor*, 510 Mich App at 129. As a result, the default sentence for a juvenile offender in Michigan is a term of years sentence. *Id*. at 132. The prosecution must overcome the presumption against imposing a life-without-parole sentence on a juvenile by clear and convincing evidence. *Id*. at 129. Clear and convincing evidence is "evidence so clear, direct and weighty and convincing as to enable the factfinder to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *People v Williams*, 228 Mich App 546, 557; 580 NW2d 438 (1998) (quotation marks, citations, and alteration omitted).

"[A]ll *Miller* requires sentencing courts to do is to consider how children are different before imposing life without parole on a juvenile." *Skinner*, 502 Mich at 130. The trial court need not make any particular findings of fact. *Taylor*, 510 Mich at 134. The prosecution must simply overcome the presumption that a sentence of life without parole is disproportionate. *Id*. Sentencing courts must "start from the premise that the juvenile defendant before them, like most juveniles, has engaged in criminality because of transient immaturity, not irreparable corruption." *Id*. at 135. The trial court must justify its sentence "in a manner sufficient to facilitate appellate review." *People v Copeland*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 363925).

The trial court must consider the offender's specific circumstances before sentencing a juvenile offender to serve life without parole. *Taylor*, 510 Mich at 126.

Those *Miller* factors are: (1) the juvenile's chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences; (2) the juvenile's family and home environment—from which he cannot usually extricate himself—no matter how brutal or dysfunctional; (3) the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him; (4) the incompetencies of youth, which affect whether the juvenile might have been charged with and convicted of a lesser crime, for example, because the juvenile was unable to deal with law enforcement or prosecutors or because the juvenile did not have the capacity to assist their attorney in their own defense; and (5) the juvenile's possibility of rehabilitation. [*Id.* (quotation marks and citation omitted.)]

All of the *Miller* factors are mitigating factors. *Id*. at 139 n 25. "If a particular *Miller* factor does not militate against [life without parole], for example, at most that factor will be considered neutral." *Id*. The trial court may not consider *Miller* factors as aggravating factors that favor a sentence of life without parole. *Id*. However, *when the record contains conflicting evidence regarding a facto*r, the trial court's finding that a factor should be given neutral weight is not clearly erroneous. *Copeland*, ___ Mich App at ___; slip op at 7.[2]

## III.  FACTUAL FINDINGS

The trial court first considered Wheeler's age and its hallmark features. The trial court considered that Wheeler was under 18. It also considered the evidence that he was generally reckless and impulsive.[3]  The court did not find that fact to be mitigating because, although Wheeler was generally reckless and impulsive, he did not display such features of recklessness and impulsivity when he murdered his girlfriend in cold blood. Although Wheeler eventually told his forensic psychologist that marrying a girl after getting her pregnant was "standard procedure for" his family and that it was "[n]othing to be ashamed of," Wheeler rejected that procedure. Instead, he tried to pay a friend $10 to punch his pregnant girlfriend in the stomach. He announced to another that he was going to kill her. He sawed off the barrel of a shotgun. Then, on the night of her disappearance, he arranged to meet with her. He told her not to tell anyone where she was going. Wheeler took her to a secluded location and used his sawed-off shotgun to bludgeon her to

---

[2] Under this framework, which requires that each *Miller* factor either to be neutral or to mitigate against life imprisonment without the possibility of parole, a finding that each factor is neutral does not preclude a trial court from sentencing a defendant to serve life without parole for crimes committed as a juvenile. If it were otherwise, then there would never be any circumstance under which a defendant could be sentenced to serve life without the possibility of parole.

[3] The majority does not delve into the substance of the psychological reports. However, I note that in May 1971, a psychologist commented upon his "explosive potential" and another suggested that Wheeler would react "in a highly impulsive, *quickly* reactive, emotional way . . ."  Given that the crime in this case was premeditated for days, the evidence suggests that, contrary to his general tendency toward quick, explosive impulsivity, his actions when murdering his girlfriend were, as the trial court found, not the result of his generally reckless and impulsive nature.

death. He then left her corpse at the scene of the crime and went to a social gathering. He discounted the blood on his hands and his clothing by making up a story about how he got into a fight with some men. Later he asked a friend to help him dispose of his girlfriend's dead body. That was ultimately unsuccessful because they could not find her in the secluded location. Undeterred, he asked his friend to provide him with a false alibi. And, even after he was eventually arrested and charged in connection with his girlfriend's murder, he continued to provide false stories in an attempt to avoid the consequences of his actions. Eventually, as each of his stories was disproven, he resorted to a claim that his mind was a perfect blank and he quite simply did not remember anything. The trial court viewed the above evidence and found that it did not show that the murder was the result of reckless immaturity. It was planned in advance and carried out according to that plan. That finding was not clearly erroneous. It was well-supported by the record and took into consideration all relevant considerations.

The majority concludes that Wheeler merely "acted with reckless immaturity in response to learning he might be a father." In doing so, the majority agrees that the trial court did not err by finding that the crime was premeditated. However, the majority then finds that, because Wheeler was generally impulsive and reckless, all of his actions must have resulted from those traits. A different record could support that finding. For instance, if the facts showed that Wheeler learned that his girlfriend was pregnant and, rather than taking time to premeditate her murder, he seized upon the nearest blunt object and spontaneously beat her to death, it would be fair to characterize his actions as reckless and impulsive. But this is not that case. This is a case of someone with reckless tendencies who, in the face of getting his girlfriend pregnant, acted in a cold and calculating manner. Ultimately, the trial court, weighing the same facts as the majority, reached a different factual conclusion. The majority disagrees with that finding by pointing to facts that would support an alternate finding, but that does not amount to clear error. See *Copeland*, ___ Mich App at ___; slip op at 7 (stating that a trial court's finding that a factor is neutral is not clearly erroneous merely because there is conflicting evidence regarding that factor).

The majority makes its own factual findings when considering the circumstances of the offense. Specifically, it concludes that there was an external factor that affected Wheeler's decision to murder his girlfriend. The majority describes this external factor as "the consequences of [Wheeler's] sexual relationship—his responsibility for a pregnancy." In doing so, the majority notes that Wheeler's girlfriend wrote a letter to him indicating that she expected him to marry her, pay her alimony, or go to jail, and it faults the court for finding that the letter was not an external factor impacting Wheeler's decision-making.[4] The logical deduction from this is that the majority

---

[4] In its findings, the court stated that although Wheeler's victim had voiced her expectation that Wheeler would care for their child, Wheeler's mother had stated that she would support the child. However, Wheeler's mother testified that she had told Wheeler that she would provide support the day after his girlfriend went missing. Her statements, therefore, could not have reduced the effect of the letter on her son. Still, as noted earlier, Wheeler had told his forensic psychologist that "[m]ost of the guys in my family got married because girls were pregnant. If I got a child, I got a child. It was the standard procedure for my family. Nothing to be ashamed of." In light of this statement to his forensic psychologist, I am not definitely and firmly convinced that the trial

finds that, by getting pregnant and expecting Wheeler to marry her, pay her alimony, or go to jail, Wheeler's girlfriend put an external pressure upon him that caused him to murder her. There is a term for this explanation of Wheeler's actions: it is called victim blaming. The majority believes that Wheeler should receive a more lenient sentence because the person that he murdered expected him to be responsible for getting her pregnant. I do not. It is inconceivable to me that anyone could entertain the notion that this fiendish act of premeditated, first-degree murder could be excused because the 16-year-old-victim had sent a letter to the defendant. And it was certainly not clearly erroneous for the trial court to find as it did.

Moreover, it is clear to me that the so-called "external pressure" of Wheeler facing the consequences of getting his girlfriend pregnant is nothing more than a motive for him to commit the crime. I am not convinced that having a motive to murder someone is the type of external pressure that can or should serve as a mitigating factor to a sentence of life without the possibility of parole.[5]

The majority also considers Wheeler's abuse of inhalants and alcohol to be a part of the circumstances of the offense. Specifically, the majority faults the trial court for not finding that Wheeler's use of inhalants and alcohol are mitigating factors. The trial court expressly considered this fact at a prior hearing and concluded that Wheeler had presented no evidence that his drug abuse damaged his brain or that he had suffered from consequences of inhalant use. That finding is supported by the record. Nevertheless, the majority maintains that Wheeler's expert, Dr. Carole E. Holden, PhD, a criminal forensic psychologist, testified that chronic inhalant use is associated with "amnesia, disinhibition of impulses and over time, brain damage."[6] Nobody is contesting that aspect of her opinion. She indicated that inhalants *could* cause temporary or permanent brain damage. She did not, however, diagnose Wheeler as having had any brain damage at the time of the murder as the result of his inhalant use. Despite the lack of any evidence regarding whether and to what extent that brain damage might have occurred as a result of Wheeler's substance abuse, the majority still finds that there is evidence that he used inhalants and alcohol and that his use of

court made a mistake when finding that this factor was neutral overall. It clearly reflects Wheeler's understanding that his family would support any child that he might father. Therefore, although the trial court cited Wheeler's mother's testimony, the record nevertheless supports the court's overall finding that Wheeler knew his child would be supported.

[5] Interestingly, if, as Wheeler has solidly maintained since March 1971, he did not commit the murder, then it does not matter how immature he was at the time. But if, as he now maintains, he does not remember any of it, then how would we know—let alone have proof—that "external factors" and "transient immaturity" excuse his behavior. If he does not remember, then how can we say that the letter from his girlfriend affected him?

[6] Dr. Holden is an acknowledged expert in this field. But, despite her expertise, it remains that she did not examine Wheeler in 1970 when he committed the crime as a youth, but in 2017—nearly a half of a century after the murder—and then for only a single two-and-a-half hour interview. The records she cites could be called limited and there were no objective tests performed that could diagnosis brain damage. In fact, she indicated that physiocratic standards have changed since 1970. It is therefore not unreasonable for the trial court not to give her opinions undue weight.

those substances impacted his behaviors. It does not, however, point to any evidence showing that Wheeler was under the influence of any substances at the time he plotted and carried out his girlfriend's murder. The mere fact that he was abusing substances is sufficient for the majority to conclude that the trial court erred by not considering his abuse a mitigating factor.

I disagree. Under the majority's view, the abuse of inhalants or alcohol—regardless of the impact it has on the user—is enough to render the circumstances of the offense mitigating as opposed to neutral. And the fact that the prosecution has elicited testimony from the defense expert that Wheeler does not have diagnosed brain damage as the result of the abuse is rendered irrelevant. That there is no testimony regarding what the extent of the damage is, likewise, of no matter to the majority. All that matters to the majority is that Wheeler used inhalants and that it had some supposed, unspecified impact on his behavior. Here, given that the record supports the court's finding—made at a prior hearing—that there was no demonstrable impact on Wheeler's brain as a result of the inhalant abuse, I would conclude that the court's findings are not clearly erroneous. And the court's failure to explicitly address this issue anew when resentencing Wheeler is not grounds for reversal. Again, this is a case of the trial court and the majority considering the same evidence and reaching different factual conclusions. The majority's ability to reach a different conclusion based upon the same evidence is not enough to find that the trial court clearly erred. See *id.*

The next *Miller* factor at issue is whether Wheeler's youth negatively impacted his ability to navigate the court system. As an initial matter, the record indicates that Wheeler was born on May 16, 1952, and was close to four months short of his 18th birthday at the time of his crime. But he was convicted on March 24, 1971, approximately two months before his 19th birthday. As a result, Wheeler was an adult at the time the plea offer was made and had been so for approximately 10 months. As an adult, the *Miller* considerations related to the "incompetencies of youth" and how they might affect a juvenile's ability to assist with his own defense were not implicated. This is not, for instance, a case where a defendant commits a crime, is charged with, and convicted while under the age of 18. Nor is it a case where a defendant was convicted just a few months after attaining the age of majority. I do not believe that it is appropriate to treat Wheeler as a juvenile at the time of trial just because he was a juvenile when he committed the murder.

Regardless, the trial court did not clearly err by finding this factor to be neutral. The court found that Wheeler's youth could have affected his decision to go to trial and that a more mature client likely would not have been so obstructive to his lawyer. However, the court also found that Wheeler maintained his innocence and that the evidence against him was overwhelming; therefore, it found that the factor was neutral because additional maturity would not have affected the outcome of his trial.[7] Again, the record supported the trial court's findings. At a *Ginther* hearing, Wheeler's former lawyer testified that, despite his strong urging, Wheeler rejected an offer to plead guilty to second-degree murder. At that hearing, Wheeler testified that he would not have pleaded

---

[7] The trial court's findings on this point were inartfully worded. If Wheeler had accepted the plea offer, then he would not have had a trial. Regardless, it is plain that Wheeler rejected the plea not because of immaturity but because he maintained that he was innocent.

guilty to a lesser charge because he would not plead guilty to something he had not done. This statement was not made as a youth, but as a mature, 40-year-old middle-aged man. Moreover, when speaking to Dr. Holden, Wheeler "vehemently denied" that he killed his pregnant girlfriend. Although he later equivocated and now takes the position that he has no memory regarding whether he did or did not murder his girlfriend, the record reflects that amnesia is just the latest version of the multiple stories that Wheeler has offered in relation to the offense. Earlier versions, in contrast, included denials of involvement and suggestions that other people were involved. Given the record, I am far from being definitely and firmly convinced that the trial court made a mistake when it found Wheeler's navigation of the justice system to be a neutral factor.

But the majority is having none of it. They conclude that Wheeler's "transient immaturity and rashness undoubtedly prevented him from accepting the plea to a lesser offense." But the majority's factual finding is directly contradicted by Wheeler's own testimony, given when he was 40 years of age, that he would not have pleaded to something that he did not do. If our judiciary has any confidence in our justice system, it should not advocate that a person who claims innocence of a crime should plead guilty to it. Here, Wheeler denies he committed the crime. He denied it in 1971 when the offer was made, he denied it to his therapist in prison and he denied it at his 1992 evidentiary hearing. Immaturity thus played no role in his decision. To suggest otherwise is to strain the facts.

It is worth noting that the majority reviewed for clear error the trial court's finding that Wheeler's claims of an abusive home life were not credible. In doing so, the majority notes the evidence both in support of Wheeler's claims of abuse and the evidence suggesting that he was not abused. It then reasons that, because the trial court was permitted to make credibility determinations, the court did not clearly err by finding that Wheeler's home life was a neutral factor. I believe that the trial court's findings regarding whether Wheeler would or would not have accepted the plea offer likewise turned upon the trial court's assessment of Wheeler's credibility and were, therefore, not clearly erroneous.

Finally, the trial court considered the possibility of rehabilitation. It did not find Wheeler's prison record to be mitigating. The court adopted the rationale of its prior decision, in which it acknowledged that Wheeler's prison record improved over time and that it had a wealth of positive evaluations and positive impressions. It noted that, in January 2018, with resentencing pending, Wheeler committed a prison misconduct by possessing a contraband miniature table saw. The court was greatly troubled by the timing of the violation. It described Wheeler's misconduct as indicating either a calculated risk or an impulsive decision, which demonstrated that he lacked the transient immaturity contemplated by *Miller*.

The record supports the trial court's finding. Wheeler's Michigan Department of Corrections (MDOC) specialist testified that, in 2015 and 2018, Wheeler had been found to be a prisoner in possession of dangerous contraband. He agreed that Wheeler possessed a miniature table saw and that doing so was misconduct. The majority, in finding that the court clearly erred in its findings on this factor, considers that the misconduct did not change Wheeler's security level. Moreover, it notes that there is evidence that it was common for prison staff to ignore certain inmates' possession of tools. The specialist further indicated that saws, sharp instruments, and tools are prohibited. Although the majority's finding is one that can be fairly drawn from the record, we are not tasked with reviewing the issue de novo. Instead, this Court is tasked with

reviewing the trial court's findings for clear error. The mere fact that the majority would have weighed the evidence differently does not render the court's well-supported findings clearly erroneous. Thus, given the record before this Court, I am yet again not definitely and firmly convinced that the trial court made a mistake when it found that Wheeler's capacity for rehabilitation was neutral despite his otherwise positive record, considering his then-recent possession of dangerous contraband and the implication that his immaturity was not transient.

Ultimately, although the trial court's analysis was not perfect, I am not definitely and firmly convinced that it had clearly erred by finding that the *Miller* factors were neutral when applied to Wheeler. And, with respect, while the majority has explained its disagreement with the trial court, it has not sufficiently demonstrated that those findings are clearly erroneous. Instead, it has shown that, as to several factors, there is contradictory evidence and it finds that contradictory evidence more persuasive than the trial court did. While this may be permissible under a de novo standard or review, it is impermissible under our clear-error standard of review. Indeed, as stated above, *when the record contains conflicting evidence regarding a facto*r, the trial court's finding that a factor should be given neutral weight is not clearly erroneous. *Copeland*, ___ Mich App at ___; slip op at 7.

There are cases where a *Miller* hearing and the resentencing of a juvenile to a term of years rather than a life-without-the possibility-of-parole sentence is appropriate. This is not one of them. Accordingly, because I would affirm, I must respectfully dissent.

/s/ Michael J. Kelly